60 N.J. Super. 597 (1960)
160 A.2d 49
IN THE MATTER OF THE ESTATE OF LOUIS EATON HALL, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1959.
Decided April 11, 1960.
*598 Before Judges CONFORD, FOLEY and SCHALICK.
Mr. Fredric Baar argued the cause for defendant-appellant, William Le Roy Hall.
Mr. Charles Wollny argued the cause for defendant-respondent, Ronald Hopkins Harknett.
Messrs. Smith, Slingerland, Trauth & Holtz for the Maplewood Bank and Trust Company as Administrator c.t.a.
The opinion of the court was delivered by SCHALICK, J.S.C. (temporarily assigned).
This issue is presented to the court on a stipulation of facts to determine whether a specific bequest by will of certain bank accounts has been adeemed by the transfer of the moneys from four banks named in the will, during the testator's lifetime, to another bank and a savings and loan association. The County Court held the legacy was limited to the moneys on deposit in the banks named in the will and there was an ademption, and by reason of the failure of the legacy the moneys became a part of the residuary estate. The specific legatees appeal.
It is to be noted that the attorneys for the administrator c.t.a., whose petition for directions as to distribution gave rise to this litigation, wrote the court stating it would not *599 participate in this appeal "in the interest of conserving the rather small estate of the deceased," but that its position before the trial court had been in accord with the determination of that court.
The will of the testator was submitted to this court and the pertinent provisions are:
"I, LOUIS EATON HALL, of the City of Rochester, Monroe County, New York, being of sound mind and memory, do make, publish and declare this my last Will and Testament, in the manner following, that is to say:
FIRST: I direct that all of my just debts and funeral expenses be paid.
SECOND: I give and bequeath to my nephew, RONALD HOPKINS HARKNETT, the son of Erville M. Hall and her former husband Frederick J. Harknett, the sum of ONE HUNDRED DOLLARS ($100.00).
THIRD: I give and bequeath all the rest, residue and remainder of my property which shall be in the form of bank accounts in the Union Trust Company of Rochester, the Rochester Savings Bank, the Monroe County Savings Bank of Rochester, N.Y. and the Community Savings Bank of Rochester, N.Y., and in the form of stocks which I may die possessed to my nieces, ERVILLE M. HALL, 88 Tuscan Road, Maplewood, N.J., EDITH FRANK, Dirk Court, Northport, Long Island, and DELLA MOELLER, 56 Glenwood Avenue, Jersey City, N.J., and to my nephew WILLIAM LE ROY HALL, 131 River Drive, East Patterson, N.J., absolutely, share and share alike.
FOURTH: All the rest, residue and remainder of my property of whatever nature and wherever situate, I give and bequeath to my nephew, RONALD HOPKINS HARKNETT."
At the time of the execution of the will, on January 8, 1948, the testator resided and was domiciled in the City of Rochester, New York. On that date he had savings accounts in four banks in Rochester, New York, in amounts not stated in the record. After the execution of the will (the date is not fixed), he moved his residence and domicile from Rochester, New York, to Maplewood, New Jersey, where he died domiciled on July 12, 1957.
On August 9, 1955 the testator closed out his account in one Rochester bank in the amount of $1,325.50 and on August 24, 1955 deposited this draft in The Maplewood *600 Bank and Trust Company, Maplewood, New Jersey, in his own name; on August 8, 1956 he closed out his accounts in each of two other Rochester banks in the amounts of $1,230.19 and $1,937.55, respectively, and after closing out his account on August 9, 1956 in the fourth Rochester bank in the amount of $1,350.54, he then, on August 10, 1956, deposited these three drafts which totalled $4,518.28 in the Maplewood Savings and Loan Association, Maplewood, New Jersey, in his own name. The parties agree that the total sum of $5,843.78 is traceable directly from the four banks in Rochester to the two depositories in Maplewood.
It was additionally stipulated at the argument that the total value of the estate was about $15,350, most of which except the bank accounts here in question was in shares of stock; and that the testator left no widow or children him surviving.
It has been held that
"The test of ademption of a specific legacy in this State is whether the subject is `lost, destroyed, or subsequently disposed of by testator, or so altered in form, by testator's subsequent acts, as to indicate a change of testamentary intent on his part. Conversely, if the subject, although somewhat changed in form, be not sufficiently changed to indicate change of testamentary intent, there is no ademption.' Chase National Bank v. Deichmiller, 107 N.J. Eq. 379, 382 (Ch. 1930); In re Cooper's Estate, 95 N.J. Eq. 210 (E. & A. 1923)."
Arenofsky v. Arenofsky, 29 N.J. Super. 209, 213, 102 A.2d 101 (App. Div. 1954); Wyckoff v. Young Women's Christian Ass'n, 37 N.J. Super. 274 (Ch. Div. 1955). See Annotation, 16 A.L.R.2d 1404.
The precise question before us, then, is whether the intent of the testator was to so delimit and confine the subject matter of the specific bequests in the third paragraph of the will (bank accounts) that if the money therein should be transferred before his death to other depositories purely for his own custodial convenience, as was obviously here the case, the bequest was therefore necessarily revoked because the money was no longer in "the form of bank accounts" *601 in the specific banks named in the will. Although the literal import of the verbiage in the will lends some support to that proposition, we think sound principles of construction call for a different conclusion in the present circumstances.
As was said by Judge (now Mr. Justice) Francis in the Arenofsky case, supra (29 N.J. Super., at page 216):
"Determination of these questions requires a search for the intention of the decedent. The language he used is inartistic and ambiguous but in seeking his intention we may and should utilize the entire instrument and all of the surrounding circumstances in view of which he must have acted in making his will. In re Armour's Estate, 11 N.J. 257, 271, 272 (1953); Busch v. Plews, 12 N.J. 352, 358 (1953); Fink v. Harder, 111 N.J. Eq. 439 (E. & A. 1932); Budd v. Wilson, 61 N.J. Eq. 246, 249 (Ch. 1900); Leigh v. Savidge's Ex'rs, 14 N.J. Eq. 124 (Ch. 1861); Annotation, 94 A.L.R. 215; Clapp, Wills and Administration, § 108 (5 N.J. Practice 248)."
The decision in Prendergast v. Walsh, 58 N.J. Eq. 149 (Ch. 1899), has been cited by appellant. In that case testatrix gave to her three sisters "provided that they are all alive, or to the survivors of them, whatever of my money now on deposit" in four banks in New York City (naming them) "which may be on hand and not otherwise disposed of, share and share alike." During her life the testatrix drew her money from the four New York banks and deposited it in another bank, where it remained until her death. The court decided that the gift was of money and that it was not adeemed by the transfer. "What she gave was the money in the banks, using the words in the popular sense." (Ibid., at page 152) The court held that "If the money remained practically the same money, then the removal of it from the place of its deposit did not amount to an ademption. The place of deposit was merely used as descriptive of the thing bequeathed. It was used to identify the particular money given, and it is entirely settled that where the place is merely descriptive the removal of the things to another place is immaterial." (Ibid., at page 153)
*602 It is argued that the subject case is not controlled by the Prendergast decision because of the presence of the words "my property which shall be in the form of bank accounts" in the four named banks, and the inclusion of the words "which I may die possessed" after "in the form of stocks." These expressions, it is contended, necessarily restrict the bequest to moneys in those banks at the time of death, whereas the testamentary language in Prendergast, describing the funds on deposit, was, in the context of the entire bequest, clearly descriptive rather than restrictive. It must be conceded that the testamentary language in that case is relatively more free of ambiguity than that in the present case. But the philosophy of the Prendergast decision is applicable to the circumstances of the present case. There is nothing to indicate that the estate of the testator was substantially different in size or content when the will was drawn from when he died. The stipulated facts show that these bank accounts are a substantial part of the estate. The will gives the specific legatees the bank accounts and the testator's "stocks." Thus, the will indicates the testator probably intended to leave the bulk of his personal estate to his nieces, Erville M. Hall, Edith Frank and Della Moeller, and his nephew William Le Roy Hall, and only $100 (plus whatever might remain in the residue) to a son of Mrs. Hall, the defendant Harknett. Even if our surmises as to the size or content of the estate when the will was drawn are incorrect, it is still apparent that the testator wanted his named nieces and nephew to have the funds in question rather than the grandnephew, Harknett. It appears to us inconsistent with such an intent to deduce a purpose by the testator to alter the objects of his bounty so radically merely because of a change in the place of deposit of the moneys as it is the natural result of a removal of his domicile from Rochester, New York, to Maplewood, New Jersey.
Nothing in the language of the will forces a judicial result so variant from the obvious intent. Indeed, the *603 qualification, "which I may die possessed," stated in the will in reference to the bequest of "stocks," and which from the literal testamentary expression is not specifically applicable to the bank accounts, tends to support the view that the designation of the bank accounts in the will by bank name was intended only as formal, and merely descriptive of the subject matter of the bequests as of the time the will was executed. The testator intended to bequeath, not the particular funds in the Rochester banks, but something having a value roughly equal, or likely to be substantially equal at his death, to that amount of money. The location named in the will was the location of the funds when the will was made, and this location identified the moneys, but this was not a vital term of the bequest. The change in place of deposit did not affect the substance of the gift.
The judgment is reversed.
Application being made for counsel fees on appeal under R.R. 1:9-3 by the attorneys for the contesting parties, each is allowed $350 plus actual disbursements necessarily incurred in connection with this appeal.