413 A.2d 72.

Richard J. McGee, *Administrator c.t.a.*
*vs.* Phillip McGee *et al.*

MARCH 31, 1980.

Present: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This is a complaint for declaratory judgment, in which the plaintiff administrator, Richard J. McGee (Richard), sought directions from the Superior Court in respect to the construction of certain provisions of the will of his mother, Claire E. McGee, and instructions relating to payment of debts and distribution of assets from the testatrix's estate. The sole issue presented by this appeal concerns the question of the ademption of an allegedly specific legacy to the grandchildren of the decedent and the consequent effect of such ademption upon payment of a bequest in the amount of $20,000 to Fedelma Hurd (Hurd), a friend of the testatrix. The provisions of the will pertinent to this appeal read as follows:

"CLAUSE ELEVENTH:

I give and bequeath to my good and faithful friend, FEDELMA HURD, the sum of Twenty Thousand ($20,000.00) Dollars, as an expression to her of my appreciation for her many kindnesses.

"CLAUSE TWELFTH:

I give and bequeath all of my shares of stock in the Texaco Company, and any and all monies standing in my name on deposit in any banking institution as follows:

(a) My Executor shall divide the shares of stock, or the proceeds thereof from a sale of same, *with all of my monies, standing on deposit in my name, in any bank,* into three (3) equal parts and shall pay 1/3 over to the living children of my beloved son, PHILIP; 1/3 to the living children of my beloved son, RICHARD and 1/3 over to the living children of my beloved son, JOSEPH. Each of my grandchildren shall share equally the 1/3 portion given to them." (Emphasis added.)

At the time of the execution of the will and up until a short time before the death of the testatrix, a substantial sum of money was on deposit in her name at the People's Savings Bank in Providence. About five weeks prior to his mother's death, Richard, proceeding pursuant to a written power of attorney as modified by an addendum executed the following month, withdrew approximately $50,000 from these savings accounts. Of this amount, he applied nearly $30,000 towards the purchase of four United States Treasury bonds, commonly denominated as 'flower bonds," from the Federal Trust Company in Waterville, Maine (Richard then resided in that state). His objective in executing this transaction was to effect an advantageous method of satisfying potential federal estate tax liability.[1] The bonds, however, did not serve

---

[1]Although not otherwise redeemable before maturity, flower bonds may be redeemed at par value, plus accrued interest, upon the owner's death for the purpose of paying the federal taxes on his estate. *See Girard Trust Bank* v. *United States,* 602 F.2d 938, 940 n.1 (Ct. Cl. 1979).

the intended purpose since at the time of Mrs. McGee's death her gross estate was such that apparently no federal estate tax liability was incurred. The remainder of the monies withdrawn from the savings accounts were deposited in Clare McGee's checking account to pay current bills and in a savings account in Richard's name to be transferred to his mother's account as the need might arise for the payment of her debts and future obligations. The sole sum that is now the subject of this appeal is the approximately $30,000 held in the form of United States Treasury bonds.

The complaint for declaratory judgment sought instructions concerning whether the administrator should first satisfy the specific legacy to the grandchildren from the proceeds of the sale of the flower bonds or whether he should first pay the $20,000 bequest to Fedelma Hurd, since the estate lacked assets sufficient to satisfy both bequests.

After hearing evidence and considering legal memoranda filed by the parties, the trial justice found that the bequest to the grandchildren contained in the twelfth clause of the will constituted a specific legacy. He held further, however, that Rhode Island regarded the concept of ademption with disfavor and he sought, therefore, to effectuate the intent of the testatrix. He proceeded to determine that since there is an assumption that one intends to leave his property to those who are the natural objects of his bounty, rather than to strangers, the administrator "should trace the funds used to purchase the Flower Bonds and should satisfy the specific legacy to the grandchildren" under the twelfth clause of the will. Consequently, the trial justice held that the legacy to Fedelma Hurd under the eleventh clause of the will must fail. This appeal ensued.

The McGee grandchildren suggest that the principal design of the testatrix's estate plan, ascertainable from a contemplation of the testamentary disposition of her property, was to benefit her family rather than "outsiders." They urge us to consider her intentions -- which they assure us were concerned, in part, with protecting the family interests from an

anticipated reduction of the estate's value by taxes -- in determining whether the transfer of the funds in her accounts did in fact work an ademption. In addition, Richard points out that the decedent did not herself purchase these bonds. On the contrary, Richard acquired them in order to help discharge anticipated tax obligations of the estate and informed his mother of them only subsequently to the purchase. He argues, furthermore, not only that the funds with which he purchased the flower bonds originated in his mother's accounts, but also that since these bonds "are as liquid as cash" they are indeed monies standing in the decedent's name on deposit in a banking institution. He suggests that this description conforms in every respect to the formula drafted into the twelfth clause of her will. Merely the form of the legacy has changed, according to Richard, not its essential character, quality, or substance.

In response, appellant asserts that an ademption occurred by the voluntary act of the testatrix during her lifetime, since her son withdrew the funds as an authorized agent operating under a lawful power of attorney. There is evidence, moreover, that the testatrix subsequently ratified the purchase of the bonds when Richard afterwards told her of his actions and their intended effect upon estate taxes.[2] As a consequence, Hurd asserts that there was no longer any money standing on deposit in the name of the testatrix in any bank with which to discharge the specific legacy to the grandchildren. These transactions resulted in an extinction of the subject matter of the legacy. Hurd argues, in addition, that the intention of the testatrix, even if discernible, is irrelevant to the question of the ademption of the bequest. She therefore contends that her general legacy should be payable from the proceeds of the sale of the flower bonds.

At the outset, we recognize that the instant case concerns specifically the concept of ademption by extinction, a legal

---

[2]Richard testified his mother "was pleased that [he had] done this because there would be more money available for the children and grandchildren."

consequence that may attend a variety of circumstances occasioned either by operation of law or by the actions of a testator himself or through his guardian, conservator, or agent. *Gardner* v. *McNeal*, 117 Md. 27, 82 A. 988 (1911); *In re Wright*, 7 N.Y.2d 365, 165 N.E.2d 561, 197 N.Y.S.2d 711 (1960). In particular, a testamentary gift of specific real or personal property may be adeemed -- fail completely to pass as prescribed in the testator's will -- when the particular article devised or bequeathed no longer exists as part of the testator's estate at the moment of his death because of its prior consumption, loss, destruction, substantial change, sale, or other alienation subsequent to the execution of the will. In consequence, neither the gift, its proceeds, nor similar substitute passes to the beneficiary, and this claim to the legacy is thereby barred. Atkinson, *Handbook of the Law of Wills* §134 at 741, 743-44 (2d ed. 1953); 6 Bowe & Parker, *Page on the Law of Wills* §54.1 at 242, §54.9 at 256-57 (1962); Note, *Wills: Ademption of Specific Legacies and Devises*, 43 Cal. L. Rev. 151 (1955).

The principle of ademption by extinction has reference only to specific devises and bequests and is thus inapplicable to demonstrative or general testamentary gifts. 6 *Page, supra* §54.3 at 245, §54.5 at 248. In *Haslam* v. *de Alvarez*, 70 R.I. 212, 38 A.2d 158 (1944), we prescribed the criteria for determining the character of a legacy, relying on the earlier case of *Dean* v. *Rounds*, 18 R.I. 436, 27 A. 515 (1893), wherein we held that "[a] specific legacy, as the term imports, is a gift or bequest of some definite specific thing, something which is capable of being designated and identified." *Id.* When the testator intends that the legatee shall receive the exact property bequeathed rather than its corresponding quantitative or *ad valorem* equivalent, the gift is a specific one, and when "the main intention is that the legacy be paid by the delivery of the identical thing, and that thing only, and in the event that at the time of the testator's death such thing is no longer in existence, the legacy will not be paid out of his general assets." *Hanley* v. *Fernell*, 54 R.I. 84, 86, 170 A. 88, 89 (1934). In particular, the designation and identification of

the specific legacy in a testator's will describe the gift in a manner that serves to distinguish it from all other articles of the same general nature and prevents its distribution from the general assets of the testator's estate. 6 *Page, supra* §48.3 at 11-12.

In the case at bar, the trial justice construed the twelfth clause of Mrs. McGee's will as bequeathing a specific legacy to her grandchildren. While it is true that the party who contends the legacy is a specific one must bear the burden of proof on this issue, *DiCristofaro* v. *Beaudry,* 113 R.I. 313, 320 A.2d 597 (1974), and appellant, in her brief, characterized the twelfth clause as a bequest of a particular residuary gift, the trial justice apparently found that petitioner's contentions met the burden and that the testatrix clearly considered the bequest a specific one.

Without a doubt, the trial justice properly interpreted the McGee grandchildren's bequest, primarily because of the tone of the other provisions, the tenor of the entire instrument, *see Hanley* v. *Fernell,* 54 R.I. at 86, 170 A. at 89; *Gardner* v. *Viall,* 36 R.I. 436, 90 A. 760 (1914), and the specificity with which the testatrix described that portion of the twelfth clause relative to the Texaco stock. Additionally, money payable out of a fund -- rather than out of the estate generally -- described with sufficient accuracy and satisfiable only out of the payment of such fund, *Haslam* v. *de Alvarez,* or a bequest of money deposited in a specific bank, *Hanley* v. *Fernell,* is, as a rule, a specific legacy. When a will bequeaths "the money owned by one which is on deposit" in a designated bank, although the amount remains unspecified, the gift is nevertheless identifiable and definite, apart from all other funds or property in the testator's estate; and the legacy is specific. *Willis* v. *Barrow,* 218 Ala. 549, 552, 119 So. 678, 680 (1929); *Prendergast* v. *Walsh,* 58 N.J. Eq. 149 42 A. 1049 (Ch. 1899). Despite the fact that Mrs. McGee did not name any particular bank in the twelfth clause of her will, she bequeathed all the money in her name "in any bank." In view of the fact that she expected all of her money remaining at her death to go to her grandchildren and, further, the money

to be payable from a particular source -- that is, accounts in her name in banking institutions -- we conclude that the legacy was sufficiently susceptible of identification to render it a specific one.

Accordingly, since the bequest to the grandchildren is specific, we must now determine whether or not it was adeemed by the purchase of the bonds. Note, *Ademption and the Testator's Intent*, 74 Harv. L. Rev. 741 (1961). In connection with the early theory of ademption, the courts looked to the intention of the testator as the basis of their decisions. 6 *Page, supra* §54.14 at 265. But ever since the landmark case of *Ashburner* v. *MacGuire*, 2 Bro. C.C. 108, 29 Eng. Rep. 62 (Ch. 1786), wherein Lord Thurlow enunciated the "modern theory," courts have utilized the identity doctrine or "in specie" test. This test focuses on two questions only: (1) whether the gift is a specific legacy and, if it is, (2) whether it is found in the estate at the time of the testator's death. Atkinson, *supra* §134 at 742; Note, 74 Harv. L. Rev. at 742; Comment, *Ademption in Iowa -- A Closer Look at the Testator's Intent*, 57 Iowa L. Rev. 1211 (1972). The extinction of the property bequeathed works an ademption regardless of the testator's intent. *In re Tillinghast*, 23 R.I. 121, 123-24, 49 A. 634, 635 (1901); *Humphreys* v. *Humphreys*, 2 Cox Ch. 184, 30 Eng. Rep. 85 (Ch. 1789); 6 *Page, supra* §54.15 at 266.

The legatees of the twelfth clause argue that the subject matter of the specific bequest, although apparently now unidentifiable in its previous form, actually does exist in the estate of their grandmother but in another form as the result of an exchange or transfer of the original property. But there is a recognized distinction between a bequest of a particular item and a gift of its proceeds, *see generally* Annot., 45 A.L.R.3d 10 (1972); and the testatrix, in the instant case, did recognize the distinction in the twelfth clause of her will by bequeathing the Texaco stock "or the proceeds thereof from a sale of same" but omitting to include similar provisions regarding proceeds in connection with the language immediately following which described the bank-money legacy. It appears that the testatrix's intention, manifest on the fact of

her will, was that her grandchildren receive only the money in her bank accounts and not the money's proceeds or the investments that represent the conversion of that money into other holdings. Atkinson, *supra* §134 at 743-44; 6 *Page, supra* §54.9 at 256-57, §54.16 at 268-70; *see Gardner* v. *McNeal*, 117 Md. 27, 82 A. 988 (1911).

In accordance with the generally accepted "form and substance rule," a subtantial change in the nature or character of the subject matter of a bequest will operate as an ademption; but a merely nominal or formal change will not. *In re Peirce*, 25 R.I. 34, 54 A. 588 (1903) (no ademption since transfer of stock after consolidation of banks without formal liquidation was exchange and not sale); *Willis* v. *Barrow*, 218 Ala. 549, 119 So. 678 (1929) (no ademption by transfer of money from named bank to another since place of deposit was merely descriptive); *In re Hall*, 60 N.J. Super. 597, 160 A.2d 49 (1960) (no ademption by transfer of the money from banks designated in will to another one since location was formal description only and did not affect substance of testamentary gift).

Since the money previously on deposit in Mrs. McGee's bank accounts no longer existed at the time of her death, the question arises whether the change was one of form only, rather than substance. We have determined that the change effected by Richard was not merely formal but was substantial. There is no language in the will that can be construed as reflecting an intention of the testatrix to bequeath a gift of bond investments to her grandchildren. The plain and explicit direction of the twelfth clause of the will is that they should receive whatever remained in her bank accounts at the time of her death. Since no sums of money were then on deposit, the specific legacy was adeemed. Clearly, this case is dissimilar to those in which the fund, at all times kept intact, is transferred to a different location, as in *Willis* and *Prendergast*, where the money merely "changed hands," not character. *See also In re Tillinghast*, 23 R.I. 121, 49 A. 634 (1901) (no ademption by mere act of transferring mortgages to own name since they were in specie at the time of

testatrix's death). The fact that Mrs. McGee did not herself purchase the bonds is not significant. Disposal or distribution of the subject matter of a bequest by an agent of the testator or with the the testator's authorization or ratification similarly operates to adeem the legacy. *Gardner* v. *McNeal*, 117 Md. 27, 82 A. 988 (1911); *In re Wright*, 7 N.Y.2d 365, 165 N.E.2d 561, 197 N.Y.S.2d 711 (1960); *Glasscock* v. *Layle*, 53 S.W. 270 (Ky. 1899).

The petitioner improperly relies upon the case of *Morse* v. *Converse*, 80 N.H. 24, 113 A. 214 (1921). In that case the testatrix voluntarily placed her property into the hands of a conservator to care for and use for her support. The conservator purchased a Liberty bond out of bank deposits bequeathed in the testatrix's will, and the legacies were not adeemed thereby. But, contrary to the case at bar, the testatrix in *Morse* neither knew about nor consented to the conservator's acts; therefore, the court explained, the change "furnishes no evidence of an intentional revocation by her." *Id.* at 26, 113 A. at 215. *But see In re Wright, citing Matter of Ireland's Estate*, 257 N.Y. 155, 177 N.E. 405 (1931) (specifically bequeathed stock adeemed even though sold by conservator after testator had become incompetent).

Moreover, under the principles enunciated by Lord Thurlow in *Ashburner* v. *MacGuire,* and more fully expressed in the case of *Humphreys* v. *Humphreys,* only the fact of change or extinction, not the reason for the change or extinction, is truly relevant. The vast majority of jurisdictions adhere to this rule. *See* Atkinson, *supra* §134 at 741-42; 6 *Page, supra* §54.15 at 266-68. This "in specie" theory of ademption, although it may occasionally result in a failure to effectuate the actual intent of a testator, has many advantages. Significant among these advantages is simplicity of application, as opposed to ad hoc determination of intent from extrinsic evidence in each particular case. This theory further has the advantages of stability, uniformity, and predictability. The argument in support of Lord Thurlow's rule is well expressed in 6 *Page, supra* §54.15 at 266:

"If the sale or collection of the bequest works an ademption or not depending upon testator's intention as inferred from the surrounding circumstances, many cases will arise in which it is difficult or impossible to ascertain what testator's intention was; and probably, in many cases, testator did not think of the consequences which would follow from his conduct. If the sale or collection of the bequest operates as an ademption or not, depending upon his intentions, and such intention may be shown by his oral declarations, then the controlling evidence in the case will consist of the written will, executed in accordance with statute, together with testator's oral declarations. This violates both the letter and the spirit of state wills statutes, which insist on the formalities of writing and execution in order to avoid opportunities for perjury. For these reasons, it is now held that the sale, destruction, or collection, of the bequest or devise, adeems it without regard to the actual intention of the testator."

Accordingly, we hold that the trial justice erred in allowing the admission of extrinsic evidence regarding Mrs. McGee's intent. We further hold that the specific legacy in the twelfth clause of the testatrix's will is adeemed and the legatees' claim to this bequest is thereby barred. We direct the trial justice to order the petitioner to satisfy the general pecuniary legacy bequeathed in the eleventh clause of the will from the sale of the flower bonds, with the excess to pass under the residuary (fourteenth) clause of the will.

The respondent's appeal is sustained, the judgment below is reversed, and the cause is remanded to the Superior Court for proceedings consistent with this opinion.

*Joseph F. Penza, Jr.,* for petitioner.

*John S. Brunero, John S. Brunero, Jr., Edward W. Day, Jr., Breslin, Sweeney & Gordon, David F. Sweeney,* for respondents.