Arthur S. PIKE, Jr., Individually and
as Administrator, c.t.a., of the Estate
of Hilda S. Pike

v.

Ernest F. PIKE.

No. 88–567–Appeal.

Supreme Court of Rhode Island.

May 2, 1990.

Deming E. Sherman, Edwards & Angell, Providence, for plaintiff.

Richard W. MacAdams, Adler, Pollock & Sherman, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is a dispute between two brothers, Arthur S. Pike, Jr. (administrator), and Ernest F. Pike (Ernest). Their dispute concerns a will that was executed by the brothers' stepmother, Hilda S. Pike (Hilda), in early August 1971. Hilda died in late November 1982. Her will was admitted to probate by the Cranston Probate Court in January 1984. No appeal was taken from its admittance. When the designated executor, Old Stone Trust Company, refused the appointment, Arthur was appointed administrator, c.t.a. At the time of her death Hilda had $116,735 on deposit in various joint bank accounts. All the accounts but one stood in the names of Hilda, Ernest, and Ernest's wife, Evelyn. The remaining account stood in the names of Hilda and Ernest. The accounts had been opened by Ernest; Hilda had supplied the funds. Evelyn was unaware that her name had been placed on any of the accounts.

Hilda's will contained three dispositive clauses. One clause involved her tangible personal property and is not in issue. Another clause provided that the funds in the joint bank accounts were to be given "to the person or persons, if then living, in whose name or names the same may stand together with mine, and if any passbook, certificate or other document evidencing any such account * * * be found among my effects, I direct my executor to deliver the same to him, her or, if more than one, either of them."

The residuary clause provided that the remaining property was to be given to Hilda's husband, but in the event that he did not survive her, the property would be given in equal shares to her stepsons, Ernest,

Arthur, and Ralph.[1]

On February 1, 1984, Arthur made a formal demand that Ernest pay to Hilda's estate the proceeds in the joint accounts. Ernest rejected the demand, claiming that he was entitled to the proceeds. A month later Arthur filed suit against Ernest in the Superior Court with a four-count complaint that charged Ernest with (1) a breach of fiduciary duty owed to Hilda, (2) an improper conversion of the proceeds in the joint accounts, and (3) the perpetration of a fraud upon Hilda. Count 4 sought a declaratory judgment that the assets in the joint accounts should be distributed pursuant to the residuary clause. The trial justice directed verdicts for Ernest on Counts 1 and 3. The jury returned a verdict for Arthur on Count 2, the conversion count. The declaratory-judgment count was withdrawn during the trial. Ernest's motion for a new trial was denied in May of 1986. Ernest then filed an appeal to this court.

However, in December 1986 Ernest's appeal was withdrawn by agreement of the litigants, and a check for $156,579.63, representing the funds in dispute, signed by Ernest was delivered to Arthur's attorney pursuant to an agreement that the funds would be held in escrow pending a final adjudication of matters then pending in the Cranston Probate Court.

Earlier, in October 1986, Ernest had petitioned the Cranston Probate Court for payment of the legacy due him by virtue of the joint-account clause. Arthur objected, charging that the funds should be distributed pursuant to the residuary clause. After a hearing in the Probate Court, an order was entered that provided that the proceeds were to be distributed in accordance with the joint-account clause.

Arthur took an appeal from the Probate Court's order to the Superior Court, where the controversy was submitted to a justice of that court on a joint statement of facts, a supplemental agreed statement of facts, and memoranda of law. A Superior Court justice subsequently entered judgment for Arthur in mid November 1988. He vacated the order of the Probate Court and ruled that the funds paid in satisfaction of the conversion count should be treated as part of the general estate, thereby passing pursuant to the residuary clause.

At this point it was Ernest's turn to appeal, which he did in late November 1988.

We begin our consideration of Ernest's appeal by directing our attention to the Superior Court litigation that included Arthur's claim relative to Ernest's wrongful conversion of the funds due the estate. This court, on several occasions, has been the forum for a determination concerning which litigant is entitled to the proceeds of joint bank accounts in the event of the death of one of the joint tenants. In *Slepkow v. Robinson*, 113 R.I. 550, 553, 324 A.2d 321, 324 (1974), this court emphasized that in order to succeed in establishing an absolute inter-vivos gift, the claimant must prove by clear and satisfactory evidence that the gift was fully executed and that the donor intended it to take effect "presently and immediately."

The crucial issue in the conversion dispute was whether Hilda had made an inter-vivos gift to Ernest of the joint bank accounts.[2]

Any questions concerning this issue vanished when the foreman of the jury gave the jury's response to a typed interrogatory that asked if Hilda had made a gift to Ernest of the joint bank accounts. There

---

1. Ralph R. Pike, who played no part in this litigation, died in late January 1988. It should also be noted that Arthur died in May 1989 and Ernest died in October 1989. Counsel for the estate of Ernest has submitted a motion to this court to substitute Old Stone Trust Company, in its capacity as executor under the will of Ernest F. Pike, as a party to this proceeding. This court hereby grants the motion.

2. In *Iavazzo v. Rhode Island Hospital Trust Co.*, 51 R.I. 459, 155 A. 407 (1931), the issue concerned a savings bankbook. The court defined conversion as the taking, holding, or exercising dominion over property that belongs to another. The court in *Iavazzo* relied on *Donahue v. Shippee*, 15 R.I. 453, 8 A. 541 (1887), where the defendant converted a quantity of standing grass belonging to the plaintiff. The court in *Donahue* emphasized that wrongful intent is not an essential element of a conversion.

was a note on the interrogatory stating that if the answer to the question was yes, the verdict should be returned for Ernest, but that if the response to the inquiry was no, then the jury should return a verdict for Arthur in the amount of $116,735.19. The foreman of the jury employed a strong hand as he placed an X alongside the word "No."[3]

This determination concerning whether Hilda had made an inter-vivos gift to Ernest had no relevance when the litigants came on before a second Superior Court justice who was reviewing the Cranston Probate Court's determination that the funds in the joint accounts were to be distributed pursuant to the terms of the joint-accounts clause.

We would emphasize that at no time in this litigation has any challenge been made to the validity of the will executed by Hilda. No effort was made to set aside Hilda's will on the grounds of fraud, duress, or undue influence on the part of Ernest. No challenge was ever made in the Probate Court concerning Hilda's testamentary capacity. We have stated that this court's "primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law." *Prince v. Roberts*, 436 A.2d 1078, 1080 (R.I.1981). We have also emphasized "that where the language of a will expressly states the testator's intention, resort to the rules of testamentary construction is without warrant; it is when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked." *Goldstein v. Goldstein*, 104 R.I. 284, 287, 243 A.2d 914, 916 (1968).

█ The administrator contends that Hilda's will is ambiguous and that payment through the joint-account clause would frustrate the general intent of the residuary clause. Such a claim is completely at odds with the crystal-clear language of the joint-account clause.

We have no doubt that the will is clear and that the proceeds from Hilda's joint bank accounts should be distributed pursuant to the joint account clause. The fact that after Hilda's death the assets were "converted" and restored to the estate has no bearing on the operation of the will, which speaks at the moment of Hilda's death. If we were to agree with the administrator's arguments that the assets of the joint accounts should pass through the residuary clause, their identity and status would have to have been determined at the time they were paid into the estate rather than at the time of Hilda's death.

Having had our say, we now turn to consider the actions of the Superior Court justice who, in overturning the order of the Cranston Probate Court directing Hilda's administrator to pay to Ernest the funds in the joint accounts, classified Ernest as a "debtor" of Hilda's estate because of his "conversion" of the funds in the joint accounts. Consequently the trial justice ruled that Ernest was entitled only to that portion of the funds in the joint accounts that exceeded the judgment entered in the conversion award. Later the trial justice issued a supplemental decision in which he noted that he had misconstrued the source of the funds that Ernest employed on December 5, 1986, when he issued the $156,-579–plus check to the order of Arthur's attorney. "The Court," the trial justice noted, "had presumed that the payment was a transfer of funds from the joint accounts." However, the trial justice went on to emphasize that notwithstanding his misconception, it was obvious that the funds paid in satisfaction of the conversion judgment against Ernest became part of Hilda's general estate.

█ In taking this action, the trial justice erred. The trial justice obviously overlooked the well-established principle that holds that a will is presumed to take effect on the date of the testator's death unless a contrary intent shall expressly appear in

**3.** *See* Appendix.

the will.[4] At the time of Hilda's death, the joint bank accounts were identifiable and segregated assets of her estate that should be distributed according to the explicit directive of the joint-savings clause. It appears that the trial justice, in ordering that the funds paid in satisfaction of the judgment entered in the conversion dispute became part of Hilda's residuary estate, had a mistaken view of the doctrine of ademption.

"Ademption" is a term that describes the destruction, revocation, or cancellation of a legacy in accordance with the intention of the testator and either results from an express revocation or is implied from acts done by the testator in his or her lifetime that evidence an intent to revoke or cancel a legacy.

This court, in *McGee v. McGee*, 122 R.I. 837, 413 A.2d 72 (1980), adopted an "in specie" test for determining whether a specific legacy has been adeemed. The test first determines whether the gift was a specific legacy and then establishes whether the legacy was in the estate at the time of the testator's death. Whereas a nominal or formal change of the gift does not bring about ademption, a substantial change does. *Id.* at 844, 413 A.2d at 76. Here the joint accounts were part of the estate at the time of Hilda's death, and accordingly the proceeds from those accounts should go to Ernest as a specific bequest.

There was no ademption of the joint-savings accounts prior to Hilda's death. If the so-called conversion of Hilda's funds must be considered, the change, if any, in the funds was nominal in nature. What was experienced here is what was described in *McGee* as a mere change of hands.

Accordingly Ernest's appeal is sustained and the judgment of the Superior Court is vacated. The judgment of the Probate Court is affirmed.

4. Concrete evidence of Hilda's intent that the will take effect at the time of her death can be found in the first sentence of the joint account clause, which reads, "In case at the time of my death there are any funds upon deposit in any savings or checking account in any financial institution * * *."

APPENDIX

*Freman*

STATE OF RHODE ISLAND

SUPERIOR COURT

PROVIDENCE, SC.

ARTHUR S. PIKE, JR.,
Administrator C.T.A.
of the Estate of Hilda
S. Pike

     vs.

C.A. NO. 84-0891

ERNEST PIKE

### JURY INTERROGATORIES

1. Did Hilda S. Pike make a gift to Ernest Pike of the joint bank accounts?

_____Yes        ⊗ No

NOTE: If the answer to this question is "YES" then you shall return a verdict in favor of Defendant Ernest Pike. If the answer to this question is "NO" then you shall return a verdict in favor of the plaintiff in the amount of $116,735.91.

*Leonard P. Mowry*
Foreman

*April 25, 1986*
Date

SUPERIOR COURT
**FILED**
APR 25 1986
Richard J. Cador
CLERK