IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 10, 2007 Session

# IN THE MATTER OF: THE ESTATE OF JAMES F. GEARY, DECEASED

# JAMES SAMUAL GEARY v. CONNIE S. GEARY

### Direct Appeal from the Probate Court for Madison County
### No. 06-13544    Christy Little, Judge

———————————————

### No. W2007-00958-COA-R3-CV - Filed February 29, 2008

———————————————

This appeal involves a petition to construe a will and ademption by extinction. The decedent had a non-retirement cash brokerage account that contained four municipal bonds worth approximately $340,000. Five percent of the account was held in mutual funds and cash. The decedent executed a holographic will that included a specific bequest of the contents of the brokerage account to his wife. The will identified the account by its account number and brokerage firm, and it specifically described the contents of the account being bequeathed to the wife. After the decedent executed the will, his brokerage firm assigned a new account number to his brokerage account. The decedent subsequently arranged an "in-kind" transfer of all the contents of the account to another brokerage firm. The contents of the new account were the same as the contents of the old account: the same four municipal bonds and a small amount of cash and cash equivalents. When the decedent died, he was survived by his wife and his son from a previous marriage. The son contended that because the brokerage account number named in the will held no assets, the bequest was extinguished. He argued that the brokerage account with the new brokerage firm should pass by intestate succession, and therefore he should receive seventy percent of the asset. The probate court held that the change in account number and broker did not materially change the subject of the specific bequest, and therefore the wife was entitled to the contents of the brokerage account. The son appeals. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed & Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J.,,, joined.

Besty Hesselrode and Jeff Mueller, Jackson, TN, for Appellant

R. Bradley Sigler, Charles Exum, Jackson,TN, for Appellee

# OPINION

## I. FACTS & PROCEDURAL HISTORY

James F. Geary (the "Decedent") executed a valid holographic will[1] on or about August 6, 2003. The will is entirely handwritten and consists of twelve pages, providing, in relevant part:

> Last Will and Testament
> of
> James F Geary
>
> Be it known that I James F Geary a Resident of Jackson, County of Madison, in the State of TN, Being of sound mind, do make and declare this to be my Last Will and Testament.
> . . .
> II. Bequests:
> . . .
> To my love of my life, my wife Connie S Geary I love you sweetheart. And Im waiting until we can be together again. I leave the following:
> . . .
> 2. The entire contents of Acct No. FC1-191957 with AmSouth Investments I give to you my Love Connie S Geary and trust that you will arrange for the following.
> A.      Municipal Bond fund which represents 95% of the entire account valued at $340,000 will continue to pay mo.ly interest (tax free) of $1400 a mo. until you pass on. The actual bonds maturity date is 2017 which means you will have to reinvest the $340,000 in new municipal bonds to continue receiving the $1400/mo. Bobby Hearn and or Billy Hopkins can set this up for you.
>
> When you make your will out you will have to bequest these bonds to some one. By the time that you will have to make the decision you will know who should get them. (who needs them the most) once again Jimmy may need the most assistance due to his med. prob.'s that is of course if he is not a millionaire by then!
>
> In any case who ever gets them should know that I busted my ass for 30 yrs to put that money away. The bottom line is what ever you decide its ok with me.

---

[1] The probate court ruled that the Decedent's holographic will was properly witnessed and therefore a valid attested holographic will. The court further found that the Decedent had sufficient testamentary capacity to execute the will. These findings have not been appealed.

B. The Cash and mutual funds in this acct FC1-191957 are worth about $20,000 you could ear mark this money to pay for your funeral costs. if you want and put it in your will so the kids will know. thats what you want.

The will also included other bequests of various accounts to Mrs. Connie S. Geary, and it included a table that estimated the monthly income Mrs. Geary would receive from each account. The table listed the "Municipal Bond Fund" with an estimated monthly income of $1400. The will further provided:

P.S. Stay with this plan. Don't let any one talk you out of it or persuade you to do other kinds of investing. Lets play it safe <u>ok</u>!
And as far as the kids are concerned – well I guess they are just going to have to wait. Besides by that time they probably won't need it anyway —
We made our way just fine with out financial help from our parents and so will they. My only real concern is that if and when Jimmy's hip is gone. He can still live well and not go with out. And Im sure you'll make the right choices – when the time comes. for you to write one of these – – wills –

The Decedent bequeathed other items to his only child, James S. ("Jimmy") Geary, to his step-daughter, and to other friends and relatives.

In August of 2003, when the Decedent executed his will, he held a non-retirement cash brokerage account with AmSouth Investment Services, Inc. ("AmSouth"), which was designated account number FC1-191957. Mr. Bobby Hearn was the Decedent's investment broker at AmSouth, and he testified at trial about the Decedent's investment portfolio. Ninety-five percent of the Decedent's account was comprised of the following four individual municipal bonds:

| | |
|---|---|
| Tennessee Housing Dev. Agency #880459CQ3 | $65,000 |
| Shelby County, Tennessee #821686JD5 | 100,000 |
| Shelby County, Tennessee #821692PZ7 | 75,000 |
| Shelby County, Tennessee #821697SU4[2] | 100,000 |

Three percent of the account was comprised of a mutual fund investment, and two percent was made up of cash and cash equivalents.

AmSouth's clearing and reporting services were initially provided by a broker/dealer named National Financial Services, LLC. In other words, the Decedent's bonds in account number FC1-

---

[2] Mr. Hearn testified that all bonds are identified by "CUSIP numbers," and the identification number listed above beside each bond is its CUSIP number.

191957 were held in custody by National Financial Services, for the benefit of the Decedent. On or about December 5, 2003, AmSouth made the decision to change broker/dealers from National Financial Services to Pershing, LLC. The assets held by National Financial Services were wired or transferred in-kind to Pershing. However, the assets were not changed, and the four individual municipal bonds remained the same. Pershing had its own system of account numbers, and the Decedent's AmSouth account was given a new account number of 4W0-058103. Customers were notified of the change, but they had no choice in the matter unless they wished to close their account with AmSouth.

On September 30, 2004, the Decedent transferred the assets in account number 4W0-058103 from AmSouth to another brokerage firm, William E. Hopkins & Associates, Inc. ("Hopkins"). Hopkins uses Sterne, Agee Capital Markets, Inc., as their broker/dealer, and the Decedent's assets were designated as account number 54293077. Apparently, the Decedent was offended when his AmSouth investment broker obtained the Decedent's credit report and approached him about obtaining a mortgage loan, when the Decedent's house was already paid for. The Decedent had developed a close relationship with the president of Hopkins, Mr. William "Billy" Hopkins. The Decedent was a karate teacher, and Mr. Hopkins was one of his students. The Decedent approached Mr. Hopkins and asked him about transferring the contents of the AmSouth account, "exactly as it was," to Mr. Hopkins' brokerage firm. Mr. Hopkins arranged an in-kind transfer of all the contents of the AmSouth account (number 4W0-058103) to an account with Hopkins. According to Mr. Hopkins, "everything was transferred exactly as it was," and only the Decedent's brokerage agent changed. Mr. Hopkins testified about the transaction as follows:

> Q. Now, this account transfer form. Let's go over this. It shows and I've got this highlighted. It shows transfer type, brokerage change.
> A. Yes.
> Q. Expand on that a little bit?
> A. Okay. Basically what we were requesting was that we didn't want to liquidate the account. We simply wanted to move the account to where we could work with [the Decedent] on his account, but nothing would be changed.
> Q. You could service the account?
> A. We could service, but basically it would just stay intact.
> [The Court]: Otherwise, you've got to pay taxes on it.
> A. Absolutely.

If the account had been liquidated, AmSouth would have moved "in essence, a check[,]" over to Hopkins. However, in this case, the bonds and other assets were simply transferred. The Hopkins account then held the four municipal bonds along with a small amount of cash and cash equivalents. These assets remained intact until the Decedent died, as he never changed his investment portfolio.

The Decedent passed away on December 7, 2005, at the age of 55. Letters of Administration were issued to Mrs. Geary on January 30, 2006, and she was appointed executrix of the Decedent's estate. The Decedent's holographic will was admitted to probate, and Mrs. Geary filed a petition to construe the will raising questions regarding various provisions. Relevant to this appeal, Mrs. Geary contended that she was entitled to the four municipal bonds the Decedent owned based upon the following provision of the will:

> To my love of my life, my wife Connie S Geary I love you sweetheart. And Im waiting until we can be together again. I leave the following:
>
> . . .
>
> 2. The entire contents of Acct No. FC1-191957 with AmSouth Investments I give to you my Love Connie S Geary and trust that you will arrange for the following.
>
> A. Municipal Bond fund which represents 95% of the entire account valued at $340,000 will continue to pay mo.ly interest (tax free) of $1400 a mo. until you pass on. The actual bonds maturity date is 2017 which means you will have to reinvest the $340,000 in new municipal bonds to continue receiving the $1400/mo. Bobby Hearn and or Billy Hopkins can set this up for you. . . .

As previously discussed, the four municipal bonds that were formerly in AmSouth account number FC1-191957 were then in Hopkins account number 54293077. Jimmy Geary, the Decedent's son, filed an answer to the petition to construe the will. He claimed that because AmSouth account number FC1-191957 contained no funds when the Decedent died, the bequest of the municipal bonds was extinguished. Jimmy Geary further contended that the will had no residuary clause; thus, the bonds should pass by intestate succession, and he should receive 70% of the assets. Mrs. Geary, on the other hand, claimed that the provision of the will stating that the Decedent's son and step-daughter were "just going to have to wait" demonstrated the Decedent's intent that Mrs. Geary would receive anything not specifically conveyed to a third party. She contended that this provision was an inartfully drawn residuary clause. Therefore, according to Ms. Geary, even if the municipal bonds did not pass to her under the specific provision of the will, she should receive them pursuant to the residuary clause.

On October 2, 2006, the probate court heard testimony from Mrs. Geary, Jimmy Geary, Mr. Bobby Hearn (the Decedent's AmSouth investment broker), and Mr. William Hopkins (the Decedent's friend and the president of Hopkins & Associates). Various exhibits were also introduced concerning the Decedent's accounts. On October 11, 2006, the probate court entered an order construing the will, in relevant part, as follows:

> **III.** The Court finds that Connie S. Geary is entitled to the contents of what was formally designated as AmSouth Account Number FC1-191957, which is currently with William E. Hopkins &

Associates, Investments (Sterne, Agee, Leach, Inc., account number 5429-3077). The Court specifically finds that the contents of said account are the same as was with AmSouth Investments and consists of the following municipal bonds:

| DESCRIPTION | QUANTITY |
| --- | --- |
| Shelby County, TN RFDG SERA B E | $100,000.00 |
| Shelby County, TN HLTH EDL & HSG FAC BRD | 100,000.00 |
| Shelby County, TN HLTH ED & HSG | 75,000.00 |
| Tennessee HSG DEB AGY | 65,000.00 |

The Court specifically finds that decedent, in September of 2004, changed brokerage companies from AmSouth Investments to William E. Hopkins & Associates and had the municipal bonds itemized above transferred from his AmSouth account (Pershing, LLC), to Williams [sic] E. Hopkins & Associates (Sterne, Agee, Leach, Inc.) but that said transfer was merely a change of brokers. Accordingly, the Court finds that no ademption of said account occurred[,] that there was no material change, that the decedent simply substituted and/or changed the broker he was dealing with, that the said contents can be clearly traced from AmSouth Investments to the account with William E. Hopkins & Associates in the same form as they were in with AmSouth and that accordingly the Court finds that Connie S. Geary is entitled to municipal bonds.

The court further found that "the language cited by the Personal Representative does not constitute a Residuary Clause." Jimmy Geary filed a notice of appeal to the circuit court, but the circuit court transferred the appeal to this Court.

## II. Issues Presented

Jimmy Geary presents the following issues for review, which we quote:

1.  Whether the change in account numbers, broker, and account for the brokerage account of Decedent was an ademption by extinction;
2.  Whether the will contained a residual clause;
3.  Whether the lapsed legacy passes under the laws of intestate succession.

For the following reasons, we affirm the decision of the probate court.

## III. Standard of Review

Construing a will is a question of law for the court. *In re Estate of Meade*, 156 S.W.3d 841, 843 (Tenn. Ct. App. 2004) (citing *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)). Whether a bequest was adeemed by extinction is purely a question of law. *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999). We review conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. Discussion

### A. Ademption by Extinction

On appeal, Jimmy Geary asserts that the probate court erred when it concluded that the Decedent's bequest of the municipal bonds was not extinguished by the change of brokers and account numbers. Jimmy Geary does not dispute that the entire account held by AmSouth was moved to William E. Hopkins and Associates. However, he contends that the change in brokers and account numbers was such a material change in the subject matter of the bequest that it interfered with the operation of the will and constituted an ademption by extinction.

It is well settled in Tennessee that a devise of specific property is extinguished upon the doing of some act with regard to the subject-matter of the devise which interferes with the operation of the will. *Stewart v. Sewell*, 215 S.W.3d 815, 824 (Tenn. 2007) (citing *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999)). For example, ademption may occur by the extinction, alienation, withdrawal, or satisfaction of a legacy. *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999). "A specific legacy is adeemed if the thing given has been lost, or disposed of by the testator, or if its condition has been so changed that it no longer remains in specie." *Baldwin v. Davidson*, 37 Tenn. App. 606, 267 S.W.2d 756, 759 (1954). The rule of ademption by extinction is "predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing

remains to which the terms of the bequest can apply." ***Estate of Hume***, 984 S.W.2d at 604 (quoting *Wiggins v. Cheatham*, 143 Tenn. 406, 225 S.W. 1040, 1041 (1920)). The rule prevails without regard to the intention of the testator or the hardship of the case.[3] ***Id.*** "In other words, it only matters that the subject of the specific bequest no longer exists because of 'the doing of some act;' it is irrelevant who or what initiates 'the doing.' " ***Id.*** (citing *Am. Trust & Banking Co. v. Balfour*, 138 Tenn. 385, 198 S.W. 70, 71 (1917)).

The identity doctrine or "in specie" test of ademption by extinction focuses on two questions only: (1) whether the gift is a specific legacy and, if so, (2) whether it is found in the estate at the time of the testator's death. ***Estate of Hume***, 984 S.W.2d at 605 (citing *McGee v. McGee*, 122 R.I. 837, 413 A.2d 72, 76-77 (1980)). "The extinction of the property bequeathed works an ademption regardless of the testator's intent." ***Id.***

A specific legacy is "a gift by will of a particular thing, or specified part, of the testator's estate, which is so described as to be capable of being distinguished from all others of the same kind." ***Matter of Estate of Hale***, 704 S.W.2d 725, 727 (Tenn. Ct. App. 1985). A general bequest, on the other hand, is one which is payable out of the general assets of the estate of the testator, such as a bequest of money in quantity, not separated or distinguished from other assets of the same kind. ***Id.*** (citing *Leaver v. McBride*, 506 S.W.2d 141, 144 (Tenn. 1974)). Clearly, this case involves a specific legacy because the Decedent bequeathed a specified part of his estate, a particular asset, to Mrs. Geary.

Next, we must consider whether the bequest was found in the estate at the time of the Decedent's death. Our Supreme Court has explained that "[a] specific legacy is adeemed when there has been a material alteration or change in the subject-matter, and [] the property into which it was converted in such change cannot be substituted as or for the specific bequest." ***Estate of Hume***, 984 S.W.2d at 605 (quoting *Am. Trust & Banking Co. v. Balfour*, 138 Tenn. 385, 198 S.W. 70, 71 (1917)). For example, in ***Am. Trust & Banking Co. v. Balfour***, the testator bequeathed life insurance policy proceeds to his daughter, but before he died, he collected the cash surrender values of the policies and invested them in real estate mortgage notes. 198 S.W. at 71. The Court held that the bequest of the life insurance policy proceeds had been adeemed. ***Id.***

---

[3] In ***Estate of Hume***, the Supreme Court explained the modern majority rule that the intent of the testator is irrelevant in ademption by extinction cases:

> [O]nly the fact of change or extinction, not the reason for the change or extinction, is truly relevant. . . . This "in specie" theory of ademption, although it may occasionally result in a failure to effectuate the actual intent of a testator, has many advantages. Significant among these advantages is simplicity of application, as opposed to ad hoc determination of intent from extrinsic evidence in each particular case. This theory further has the advantages of stability, uniformity, and predictability.

***Estate of Hume***, 984 S.W.2d at 605.

In *Baldwin v. Davidson*, 37 Tenn. App. 606, 267 S.W.2d 756, 759 (1954), a bequest of the decedent's share in a partnership was not adeemed even though the partnership was converted to corporate form before the decedent died. The Court explained that "[t]here was no change in the substance or essential nature" of the Decedent's interest in the business, "and the real nature and identity of the thing given, the subject of the legacy, ha[d] been substantially preserved." *Id.* The changes to the Decedent's interest were in name or form only, and the legacy was not adeemed by such "formal and nominal changes."[4] *Id.*

In another ademption case, a decedent bequeathed all of her Coca-Cola stock to her granddaughters, but before her death, the decedent transferred the stock to a bank as trustee of the decedent's living, revocable trust. *Hanafee v. Jackson Nat. Bank*, No. 02A01-9201-CH-00004, 1992 WL 137476, at *1 (Tenn. Ct. App. W.S. June 22, 1992). This Court concluded that the conveyance to the bank "did not materially alter the subject matter of the bequest" to the granddaughters, therefore it was not adeemed. *Id.* at *4. We explained that the "conveyance of the Coca-Cola stock to the Bank as trustee neither terminated Decedent's interest in the stock nor so changed the nature of the entire bequest that the stock did not exist at the time of Decedent's death." *Id.*

Another case held that a bequest of stock was adeemed when the testator irrevocably tendered the stock to an exchange agent before she died, in exchange for the payment of cash and an installment note. *Price v. Johnson*, 563 S.W.2d 188, 189-90 (Tenn. Ct. App. 1977). The Court found that the stock was "so changed in nature" that no bank stock existed in the estate at the time of the testator's death. *Id.* at 190. Such a material alteration of the subject matter operated as an ademption. *Id.*

In a more recent case, *Akins v. Clark*, 59 S.W.3d 124, 127 (Tenn. Ct. App. 2001), a decedent devised a farm and stock to her friend in her will, but before the Decedent died, she transferred those assets to a limited partnership in exchange for an interest in the partnership. The Eastern Section of this Court found that there was a "material change or alteration in the subject of the Bequests, the farm and stock[,]" because the decedent no longer owned the assets, but instead owned a partnership interest. *Id.* The devised assets had become the property of the partnership, therefore, the bequests were adeemed by extinction. *Id.*

Applying all these principles to the case before us, we conclude that the Decedent's bequest was not adeemed by extinction. The specific bequest included "[t]he entire contents of Acct No.

---

[4] The *McGee* case, cited approvingly by the Supreme Court in *Estate of Hume*, explained that "[i]n accordance with the generally accepted 'form and substance rule,' a substantial change in the nature or character of the subject matter of a bequest will operate as an ademption; but a merely nominal or formal change will not." 413 A.2d at 76 (citing *In re Peirce*, 25 R.I. 34, 54 A. 588 (1903) (no ademption since transfer of stock after consolidation of banks without formal liquidation was exchange and not sale); *Willis v. Barrow*, 218 Ala. 549, 119 So. 678 (1929) (no ademption by transfer of money from named bank to another since place of deposit was merely descriptive); *In re Hall*, 60 N.J.Super. 597, 160 A.2d 49 (1960) (no ademption by transfer of the money from banks designated in will to another one since location was formal description only and did not affect substance of testamentary gift)).

FC1-191957 with AmSouth Investments," which the Decedent described as the "Municipal Bond fund which represents 95% of the entire account valued at $340,000," as well as the "Cash and mutual funds." The subject matter of this bequest was not so changed in nature or materially altered that the property did not exist when the Decedent died. In fact, the entire "contents" of account number FC1-191957 still exist in one account, and were not liquidated, added to, disposed of, or otherwise substantively changed. Moreover, the Decedent's interest in the property did not change. As in **Baldwin**, 267 S.W.2d at 759, there was no change in the "substance or essential nature" of the property, "and the real nature and identity of the thing given, the subject of the legacy, has been substantially preserved." We believe that the changes in account number and brokerage firm were formal and nominal changes in the asset, not substantive changes giving rise to an ademption by extinction. As previously discussed, the rule of ademption by extinction is "predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply." *Estate of Hume*, 984 S.W.2d at 604 (quoting *Wiggins v. Cheatham*, 143 Tenn. 406, 225 S.W. 1040, 1041 (1920)). The case before us does not present such a situation.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the probate court and remand for further proceedings consistent with this opinion. It is not necessary for us to address the issues presented regarding the proposed residuary clause and intestate succession. Costs of this appeal are taxed to the appellant, James S. Geary, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE