**In re the ESTATE OF Stephen Leonard WARMAN, Eugene Topolski, Personal Representative.**

**Carolyn WARMAN, Appellant–Petitioner,**

**v.**

**Randy S. WARMAN, Eric M. Wetzel, and Timberlee Massert, Appellees–Respondents.**

**No. 20A05–9606–CV–236.**

Court of Appeals of Indiana.

July 7, 1997.

---

Mark A. Matthes, Yoder Ainlay Ulmer & Buckingham, Goshen, for Appellant–Petitioner.

David V. Bent, Bingham & Loughlin, Mishawaka, for Appellees–Respondents.

## OPINION

SHARPNACK, Chief Judge.

Carolyn Warman appeals the trial court's disposition of the estate of her late husband, Stephen. Carolyn raises two issues for our review, which we restate as:

1) whether the trial court properly found that the specific bequest of the railroad settlement was not adeemed; and

2) whether the trial court properly found that the transfer of a mobile home to Eric Wetzel before Stephen's death was a gift inter vivos and not a gift causa mortis.

We reverse on the first issue and affirm on the second.

The facts most favorable to the judgment follow. Stephen executed his last will and testament on September 14, 1992. This will contained the following bequest: "I hereby give, devise, and bequeath any recovery or settlement which I may receive as a result of a railroad injury to be divided equally between my wife, Anna Carolyn Warman, and my son, Randy Stephen Warman." Record, p. 11.

On September 9, 1993, Stephen received a railroad settlement of $650,000 for personal injuries he had suffered. After attorney's fees and costs were satisfied, Stephen received the remaining $459,307.14.

On March 28, 1994, Stephen executed the certificate of title of his 1979 motor home to Wetzel. The following morning, Wetzel drove Stephen to a doctor's appointment to check a heart condition. Stephen learned that condition was not as serious as he had previously thought. However, on April 1, 1994, Stephen died of injuries sustained in a car accident.

On April 27, 1994, the personal representative for the estate filed a petition for probate of will and issuance of letters. On September 26, 1994, the personal representative filed an inventory of assets owned by Stephen at his death.

On October 4, 1994, Randy filed a petition for construction of the will, recovery of possession of assets, and distribution of specific bequests in which he asked the court to construe his father's will with respect to the railroad settlement. On November 18, 1994, the trial court conducted a hearing on the issues raised in the petition and took the matter under advisement.

On November 18, 1994, Carolyn filed a petition to include certain assets in the estate and later filed an objection to the distribution. The trial court conducted a hearing on her petition to include assets in the estate on June 27 and 28, 1995.

On February 12, 1996, the trial court entered its order. The trial court found that Stephen's bequest of the railroad settlement was not adeemed and that Stephen made a gift of the 1979 motor home to Wetzel before his death. Carolyn now appeals the trial court's judgment.

### I.

The first issue raised for our review is whether the trial court properly found that the specific bequest of the railroad settlement was not adeemed. In its order, the trial court stated in part:

"The question before the Court is whether there was an ademption of the settlement received as a result of the railroad injury.

If the sum received from the railroad injury were placed into a bank account no reasonable person would argue that there had been an ademption.

If the railroad settlement had been received and placed in stocks and bonds no reasonable person could argue that there had been an ademption. Here the railroad proceeds were invested in other assets i.e. real estate, automobiles, and the question before the Court is whether this has caused an ademption.

The Court finds that it has not and that Petitioner, Randy S. Warman, should be able to trace any funds received from the railroad settlement into assets owned by the decedent at the time of his death...."

Record, pp. 156–157.

■ The record does not reflect a request by one of the parties for specific findings, so the trial court entered specific findings of fact and conclusions thereon sua sponte. As such, with respect to the issues covered by the findings we must determine whether the findings are sufficient to support the judgment. *Nelson v. Gurley,* 673 N.E.2d 497, 499 (Ind.Ct.App.1996). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The trial court's findings and judgment which flow therefrom will not be set aside on appeal unless they are clearly erroneous. *Patterson v. Grace,* 661 N.E.2d 580, 584 (Ind.Ct.App.1996). The findings are clearly erroneous if the record contains no facts which support the findings either directly or by inference. *Id.* The judgment is clearly erroneous if it is unsupported by the findings of fact and the conclusions which rely on those findings. *Id.*

■ Ademption by extinction has been defined as an act which causes a legacy to become inoperative because the subject matter of the legacy has been withdrawn or disappeared during the testator's lifetime. *In re Scheele,* 517 N.E.2d 418, 425 (Ind.Ct. App.1988), *reh'g denied, trans. denied.* Ademption applies only to specific legacies and occurs only when the subject matter of the legacy is so altered or extinguished that the legacy is completely voided. *Pepka v. Branch,* 155 Ind.App. 637, 654, 294 N.E.2d 141, 150 (1973). The legatee is not entitled to look to the general assets of the estate for

satisfaction in lieu of the specific bequest. *Id.*

■ In *Pepka,* we established Indiana's approach to ademption by specifically adopting the "Modern Rule." *Id.* at 659, 294 N.E.2d at 153. This approach is sometimes referred to as the "form and substance" test. This rule eliminates the search for the intention to adeem and confines the trial court's responsibility to ascertaining whether the specific subject matter of the bequest is still in existence. *Id.* at 656, 294 N.E.2d at 152.

■ The first step under this approach is to establish the identity of the specific bequest which the testator purports to make under the terms of the will. *Id.* at 658, 294 N.E.2d at 153. The second step is the application of the form and substance test. *Id.* If there has only been a formal change in the bequest since the execution of the will, there is no ademption; however, if the specific bequest has changed in substance, the legacy is adeemed. *Id.* at 656, 294 N.E.2d at 152. The intent of the testator is relevant only to an examination of the four corners of the will to determine the identity or exact thing which is the subject matter of the bequest at the time of the execution of the will. *Id.* at 658, 294 N.E.2d at 153. As we stated, "a will speaks from the date of its execution in order to ascertain the intention of the testator with respect to the identity of the gift he intended to bequeath. Beyond that point, an inquiry into the intention of the testator is not proper." *Id.*

■ Pursuant to the two-step rule, we must first identify the specific bequest which Stephen made under the will. *See id.* at 658, 294 N.E.2d at 153. A specific bequest is defined as a bequest of some definite or specific part of the testator's estate which is capable of being designated, identified, and distinguished from other like things composing the testator's estate. *Weaver v. Schultz,* 177 Ind.App. 563, 380 N.E.2d 601, 602 (1978). Money may be a specific legacy if it is designated with sufficient certainty. *Id.*

■ Stephen's will clearly states that he intended to transfer any recovery or settlement which he received as a result of his railroad injury to his wife and to his son.

Stephen designated this settlement with certainty and specificity. As such, the funds resulting from the settlement are distinguished from other monies in the estate. Thus, we find that the bequest of the railroad settlement was specific enough to be subject to ademption. *See id.* Therefore, the first part of the test is satisfied. *See Pepka*, 155 Ind.App. at 658, 294 N.E.2d at 153.

 The second part of the test is the application of the form and substance test. *Id.* Under this part, the bequest fails if the article specifically bequeathed has been given away, lost, or destroyed during the testator's lifetime. *Id.* at 657, 294 N.E.2d at 152. Slight changes in form do not cause ademption. *Id.* at 651, 294 N.E.2d at 150.

In *Diaz v. Duncan*, 406 N.E.2d 991 (Ind. Ct.App.1980), the testatrix bequeathed half of the money in the credit union, half of the money in her checking account, and all of the money in a joint account to her daughter Christine. To her daughter Genevieve, she bequeathed half of the money in the checking account and half of the money in the credit union. Before the testatrix's death, Christine died, and the testatrix was declared incompetent. Genevieve was appointed guardian. Genevieve opened two guardianship accounts to which she transferred the credit union account, the proceeds from a joint savings account, and the proceeds from the sale of stock.

After the testatrix's death, the trial court honored the specific bequests to Genevieve and to Christine's heirs despite the intervention of the guardianship transfers. On appeal, we held that the transfer of the accounts by the guardian did not work an ademption because of a statute concerning guardianships of incompetents, the provisions of which precluded ademption of the specific legacies. *Id.* at 996. Importantly, however, we noted that had the testatrix made the transfers herself, the specific bequests would have been adeemed. *Id.*

Aside from *Diaz*, Indiana case law provides little guidance as to whether a change in an asset constitutes a change in form or in substance. Nonetheless, a perusal of other jurisdictions uncovered a few cases which shed light on the circumstances before us.

In *Mayberry v. Mayberry*, 318 Ark. 588, 886 S.W.2d 627 (1994), the testatrix bequeathed a joint savings account at a particular bank to her daughter for her life. The joint account was closed prior to the testatrix's death, and three certificates of deposit were purchased in her name with the money from the savings account and her individual funds. The Arkansas Supreme Court held that the bequest in the will was adeemed. *Id.* at 594, 886 S.W.2d 627, 866 S.W.2d at 630.

In *Baybank Harvard Trust Co. v. Grant*, 23 Mass.App.Ct. 653, 504 N.E.2d 1072 (Mass. Ct.App.1987), the testatrix specifically bequested funds in a certain bank account. Before her death, the testatrix withdrew the entire balance from that account, deposited those funds into a checking account in another bank and invested the money from time to time in certificates of deposit. The court refused to trace the specific legacy despite the fact that the court found that the funds from one bank account had been transferred to another bank and invested in similar accounts. *Id.* at 1074. The court reasoned that the funds in the specifically described account had physically disappeared before the death of the testatrix. *Id.*

In *Kidd v. Sparks*, 276 Ark. 85, 633 S.W.2d 13 (1982), the testator willed to his son and daughter the proceeds from two real estate escrow accounts funded by periodic mortgage payments from third parties. Months before the testator's death, the note secured by one mortgage was paid off in the amount of approximately $12,000. The testator took that deposit and supplemented it with his own funds to buy a certificate of deposit for $15,000. In holding that an ademption had occurred, the Arkansas Supreme Court stated, "[c]ommon logic says that the [note] had been adeemed prior to the testator's death. Obviously, the testator could have placed his childrens' [sic] names on the CD if he had wanted them to receive it." *Id.* at 89, 633 S.W.2d at 15–16.

In *McGee v. McGee*, 122 R.I. 837, 413 A.2d 72 (1980), the testatrix bequeathed all the money in her name "in any bank" to her grandchildren. Before her death, the testatrix converted the money in the accounts into

**562**

bonds and other investments. The Rhode Island Supreme Court found that the testatrix's intention, manifest on the face of her will, was that her grandchildren receive only the money in her bank accounts and not the money's proceeds or the investments that represent the conversion of that money into other holdings. *Id.* at 845, 413 A.2d at 76. There was no language in the will that could be construed as reflecting an intention of the testatrix to bequeath a gift of bond investments to her grandchildren. The court reasoned that:

"[o]nly the fact of change or extinction, not the reason for the change or extinction, is truly relevant. The vast majority of jurisdictions adhere to this rule.... This 'in specie' theory of ademption, although it may occasionally result in a failure to effectuate the actual intent of a testator, has many advantages. Significant among these advantages is simplicity of application, as opposed to ad hoc determination of intent from extrinsic evidence in each particular case. This theory further has the advantages of stability, uniformity, and predictability."

*Id.* at 846, 413 A.2d at 77. As a result, the court held that the specific bequest was adeemed. *Id.* at 845, 413 A.2d 72, 413 A.2d at 76.

■ In *Williamson v. Merritt,* 257 Ark. 489, 519 S.W.2d 767 (1975), the testatrix had bequeathed her savings and loan account to her two grandnephews. She then withdrew $3000 from that account to be used for her medical expenses. That money was then commingled in a checking account with other funds. At the time of her death, the checking account contained more than $3000. The Arkansas Supreme Court held that the $3000 withdrawn from the savings account and deposited in the checking account was adeemed and that the checking account passed through the residuary clause. *Id.* at 491, 519

S.W.2d at 769. The court noted that the will did not "freeze" the savings account at any specific sum. Turning to the present case, Randy argues that because Stephen invested the settlement money, he should be entitled to half of the investments pursuant to the specific bequest.[1] However, the aforementioned authority suggests that withdrawing money from an account for the purpose of investing it constitutes a change in the substance of the bequest rather than merely a change in the form. This has been true even where the specific bequest was withdrawn and used to purchase such investments as certificates of deposit. *See Mayberry,* 318 Ark. at 594, 886 S.W.2d at 630.

Had Stephen initially purchased such investments as certificates of deposit and mutual funds with the settlement money, we might be inclined to find that only the form of the settlement had changed because the money was initially invested as soon as Stephen received it. However, the testimony at the hearing demonstrates that he did not invest the money in such a fashion when he received it. Rather, the record reveals that Stephen spent the money on real and personal property for himself, as well as on gifts for his friends and family. For example, testimony indicated that Stephen purchased approximately thirty acres of land adjoining his farm. Stephen gave Wetzel a truck and his wife $5000 with which to purchase a van. Stephen also purchased two trucks from Wetzel. In addition, Stephen gave money to his mother. Furthermore, the petition filed by Randy alleges that Stephen used the settlement funds to acquire a condominium in Hawaii, a Jaguar, a 1931 Ford Roadster, a covered car carrier trailer, a 1953 Corvette, a 1974 Corvette, three new computers, a Chevrolet truck, and a gun collection. The petition alleges that the remaining $2000 was deposited in a bank account. None of the

---

1. Randy also argues that application of the strict rules of ademption would produce an absurd result. Randy argues that to prevent ademption of the settlement, Stephen would have had to have kept the actual settlement check without cashing or depositing it. He claims that cashing or depositing it would have caused ademption under the strict application of the rule. However, we do not assert that the specific gift was

adeemed when Stephen deposited those funds into a bank account. The settlement was not the check itself, but rather the funds represented by the check. Therefore, the ademption took place when Stephen withdrew the funds from the initial place of deposit and bought assets with those funds. In other words, the specific bequest was adeemed when he spent the money.

parties allege that funds from the settlement remained at the time of Stephen's death.

As we previously mentioned, the trial court found that the "railroad proceeds were invested in other assets." Record, p. 157. In characterizing Stephen's purchases this way, the trial court had to implicitly conclude that Stephen intended to "invest" and protect rather than to spend the funds by purchasing the real and personal property. However, we have already stated that the testator's intent is relevant only to an examination of the four corners of the will to determine the identity or exact thing which is the subject matter of the bequest at the time of the execution of the will and that an inquiry into the intention of the testator is not proper beyond the date of execution. *Pepka*, 155 Ind.App. at 658, 294 N.E.2d at 153. Therefore, the trial court erred by failing to consider only the facts of the change and not the reason for it. *See id.*

We find that Stephen spent the settlement funds on various items, including real and personal property. The act of spending the settlement funds on a variety of items is vastly different than investing part or all of the funds with the intention of keeping the money largely intact. As such, we find that Stephen failed to preserve the integrity of the settlement funds. Not only was the form of the specific bequest changed, but also the substance. Therefore, we conclude that the dispersal of the funds into a variety of real and personal properties was sufficient to cause an ademption of the specific bequest. To find otherwise would permit legatees of specific bequests of money to trace the money to any item purchased with the money by arguing that the new asset was simply an investment of the former. Not only would this defeat the purpose of the ademption doctrine, but it would also contradict the accepted principle that the legatee is not entitled to look to the general assets of the estate for satisfaction in lieu of the specific bequest.[2] *See Pepka,* 155 Ind.App. at 654, 294 N.E.2d at 150.

Consequently, we hold that the specific bequest of the railroad settlement was adeemed and, therefore, that the trial court's judgment was clearly erroneous with respect to this issue. Accordingly, we reverse the trial court's judgment to the extent it found no ademption and permitted Randy to trace the settlement proceeds to the assets.

## II.

The second issue for our review is whether the trial court properly found that the transfer of a mobile home to Wetzel before Stephen's death was an inter vivos gift. Carolyn filed a petition to include assets, in which she listed the mobile home. The trial court ruled against her by holding that Stephen gave the mobile home to Wetzel. Consequently, Carolyn is appealing a negative judgment with respect to the disposition of the mobile home. *See Estate of Langley,* 546 N.E.2d 1287, 1289 (Ind.Ct.App.1989), *trans. denied.* The trial court will be affirmed unless all evidence leads to the conclusion that the trial court's findings are clearly erroneous and against the logic and effect of the facts. *Estate of Banko,* 622 N.E.2d 476, 480 (Ind.1993), *reh'g denied.* In determining whether the findings of fact are clearly erroneous, we will neither reweigh the evidence nor determine the credibility of the witnesses. *Id.* at 481. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

In addition to the competency of the donor, a valid inter vivos gift requires the donor's intent to make a gift, the delivery by the donor and acceptance by the donee, the completion of the donation with nothing left undone, and the fact that the gift is immediate and absolute. *Estate of Deahl,* 524 N.E.2d 810, 811–812 (Ind.Ct.App.1988), *trans. denied.* The donor's intent is generally a question of fact for the trial court. *Id.* at 812.

Wetzel testified that the night before he took Stephen to the hospital, Stephen

---

**2.** We note that Stephen's will contained a separate provision bequesting all real estate to Carolyn. Consequently, if we found that the specific bequest of the settlement proceeds was not adeemed, we would be faced with conflicting provisions in the will with respect to the distribution of the real estate purchased after he received the settlement.

signed over the title to him. Wetzel testified:

"when I was over there that night talking to him the night before, that's when he wanted to sign the thing over to me.

And at that time, I told him, I said, it didn't make any difference to me. I didn't have much use for it. But, he liked going out and getting away from everything. And at that time, my wife and I were having problems, and he knew I was working a lot of hours. And that was just—he just gave it to me to get out and get away from things."

Record, p. 312. He further stated that he believed the motor home was a gift.

We have reviewed the relevant portions of the record and conclude that the trial court's decision that Wetzel received the motor home as a valid inter vivos gift is not clearly against the logic and effect of the facts before it. Although in some instances the evidence is conflicting or could support a different conclusion than that reached by the trial court, it is for the trial court to resolve the factual conflicts. Therefore, we find no error with respect to this portion of the trial court's order.

For the foregoing reasons, we reverse in part and affirm in part the judgment of the trial court. this case is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BARTEAU and DARDEN, JJ., concur.