### In re the ESTATE OF Doris P. JACKSON.

**John Cox and Daphne Barger, Appellants,**

**v.**

**George R. Jackson II and Portia Swiger, as Personal Representatives of the Estate of Doris P. Jackson, Deceased, and Marsha Turpin, Randall Jackson, Linda Lucas, and James Cox, Legatees, Appellees.**

No. 77A04–1005–ES–331.

Court of Appeals of Indiana.

Nov. 24, 2010.

Jeffrey B. Kolb, Emison Doolittle Kolb & Roellgen LLP, Vincennes, IN, Attorney for Appellants.

Jeff R. Hawkins, Hawkins Law PC, Sullivan, IN, Attorney for Appellees George R. Jackson II and Portia Swiger.

## OPINION

CRONE, Judge.

### Case Summary[1]

In her will, Doris P. Jackson bequeathed 120 acres to eight beneficiaries. After Doris's death, a coal company offered to purchase the land for over $1,400,000. The personal representatives of Doris's estate petitioned the trial court for an order authorizing the sale of the property to pay the obligations of the estate. Two of the

---

1. Because several of the parties have a common surname, we refer to all parties by first name where appropriate.

beneficiaries objected to the sale. Pursuant to Indiana Code Section 29–1–15–4, the personal representatives petitioned the trial court for an order requiring the objectors to post a bond to pay the estate's obligations, estimated at over $124,000. The trial court ordered the objectors to post a $100,000 cash bond.

In this interlocutory appeal, the objectors, Daphne Barger and John Cox ("Appellants"), contend that the trial court erred in setting the amount of the bond and in ordering them to post a cash bond. Finding no abuse of discretion in either respect, we affirm.

### Facts and Procedural History

Doris's will reads in pertinent part as follows:

I direct that my Personal Representative[s] pay all my just debts, funeral and burial costs, the expenses of settling my estate and any and all estate or inheritance taxes, whether state or federal, which may be assessed as the result of my death, such taxes and expenses to be paid out of my general estate as part of the expenses of administration.

. . .

I expressly direct that my Personal Representative[s] shall have full power and discretion to do any and all acts in the administration of my estate as would be had under a Court Order of Non–Supervision, including the power to sell at public or private sale, any real or personal property of mine, without court order or notice to any person. . . .

. . .

I specifically give, devise, and bequeath to my daughter, Portia Swiger, my house and property located in Dugger, Indiana.

I specifically give, devise, and bequeath to my daughter, Portia Swiger, my farm house plus the surrounding 15 acres out of my 120 acre[ ] plot more or less. The estate is to provide her with any and all needed easement or accesses to make full usage of all of the acres she is receiving, in the event that she does not survive me to her daughter, Carrie Inman.

I specifically give, devise, and bequeath to Marsha Turpin, Daphne Barger, John Cox, James Cox, Linda Lucas, Randall Jackson, and George Jackson II the remaining acres out of [the] 120 acre[ ] plot more or less to divide in equal shares, if these persons do not survive me to their descendants, per stirpes and not per capita.

All the rest and residue of my estate both real and personal, where ever located, including without limitation, all property acquired by me or to which I may become entitled after the execution of this Will, I give, bequeath and devise to Portia Swiger, Marsha Turpin, Daphne Barger, John Cox, James Cox, Linda Lucas, Randall Jackson, and George Jackson II.

. . . .

I nominate and appoint Portia Swiger and. George Jackson II, as Personal Representatives of this my Last Will and Testament and direct that they shall serve without bond.

Appellants' App. at 21–22.

Doris died in April 2009. Her will was probated in July 2009, and the trial court appointed Portia and George as personal representatives of her estate. On October 30, 2009, Portia and George ("the Representatives") filed with the trial court a "Personal Representatives' Inventory" and a "Petition to Sell Real Estate," which reads in pertinent part as follows:

2. The decedent herein died the owner of a fee simple interest in the following described real estate situated in Sullivan County, Indiana, to-wit:

The South half of the Northwest quarter of the Northwest quarter of Section 15, Township 6 North, Range 8 West, containing 20 acres, more or less.

The North half of the Southwest quarter of the Northwest quarter of Section 15, Township 6 North, Range 8 West, containing 20 acres, more or less.

The East half of the Northeast quarter of Section 16, Township 6 North, Range 8 West, containing 80 acres, more or less. [This parcel contains the farm house and the unspecified fifteen acres that Doris bequeathed to Portia.]

And containing in all, 120 acres, more or less.

3. The fair market value of the above described real estate is $343,000 as shown in the Inventory filed with the court.

4. No lienholders exist who require notice of the filing of this petition.

5. It is necessary for the Co–Personal Representative[s] to sell said real estate to pay claims, expenses of administration and taxes to be assessed in the estate and to facilitate distribution and such sale is in the best interests of the estate and the legatees thereof.

6. The Co–Personal Representatives have received an offer to purchase the Real Estate for a purchase price of $1,471,763.00 from American Land Holdings of Indiana, LLC (hereinafter "Peabody" [Coal Company] ), a copy of the Agreement for Purchase of Real Estate is attached hereto as Exhibit A.

WHEREFORE, George R. Jackson, II and Portia Swiger as Co–Personal Representatives of the estate of Doris P. Jackson, deceased, respectfully pray[ ] the Court to enter an order authorizing the sale of the Real Estate without further notice, at private sale, to Peabody for a purchase price of $1,471,763.00, which purchase price is higher than the fair market value; authorizing the Personal Representative[s] to pay only expenses relating to such sale and for all other relief just and proper in the premises.

*Id.* at 60–61. The trial court held a hearing on the petition to sell, and Appellants objected to the sale of the Real Estate.

On January 20, 2010, the Representatives filed a "Petition to Set Bond to Pay Claims, Taxes, and Administrative Expenses," which reads in relevant part as follows:

4. The Will bequeathed the residence situated on the Real Estate to Portia Swiger and 15 acre parcels in the Real Estate [i.e., the aforementioned 120 acres] to each of the other legatees without specifying how the 15 acre parcels should be partitioned.

. . . .

7. The Co–Personal Representatives have received an offer to purchase the Real Estate for a purchase price of $1,471,763.00 from American Land Holdings of Indiana, LLC (hereinafter "Peabody"), and petitioned the Court for authority to accept the Peabody offer (the "Petition to Sell").

8. The Court set the Petition to Sell for hearing and heard objections to the petition from Daphne Barger and John Cox (the "Objectors").

9. Indiana Code § 29–1–15–4 provides the following response to the Objectors' objection:

An order authorizing a personal representative to sell, mortgage or lease real or personal property for the payment of obligations of the estate shall not be granted if any of the persons

interested in the estate shall execute and file in the court a bond in such sum and with such sureties as the court may approve, conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor, within such time as the court shall direct. An action may be maintained on such bond by the personal representative on behalf of any person interested in the estate who is prejudiced by breach of any obligation of the bond.

10. *Value of the Estate*: If the Court determines that the Real Estate Value is $1,471,763, then the Decedent's estate consists of the following assets (hereafter, all values are rounded to the nearest dollar):

| | |
|---|---|
| 120 Acre Farm | $1,471,763 |
| House in Dugger (per Inventory) | 32,000 |
| Cash Rent Checks (per Inventory) | 3,625 |
| Bank Accounts (per Inventory) | 5,686 |
| Personal Property (estimated, appraisal pending) | 1,000 |
| Total Estate: | $1,514,074 |

11. *Expenses, Claims, and Inheritance Taxes*: The Decedent's Last Will and Testament directs the Co–Personal Representatives to pay all of the Decedent's just debts, funeral and burial costs, the expenses of settling the Decedent's estate, and all estate or inheritance taxes, from the general estate.

    a. If the estate has a value as shown in paragraph 10, then the attorney's fee will be $47,422 (based on a 5%–3% standard typically used in such estates and as stated in the legal engagement between the Co–Personal Representatives and Hawkins Law PC). Accordingly, the Co–Personal Representatives' fee would be a total of $23,711.

    b. The total amount of claims filed in the estate is $16,905.

    c. To date, the Co–Personal Representatives have paid $4,832 in expenses (not including claims) from the estate assets.

    d. The Co–Personal Representatives anticipate that there may be future expenses in an amount up to $5,000.

    e. The Decedent died having a certain mortgage on the real estate located in Dugger, Indiana. At the Decedent's [d]eath, the mortgage had a balance of $9,308, including interest.

    f. George R. Jackson, II, has paid, from his own funds, $4,797 to the Sullivan County Treasurer for real estate taxes due on the real estate which was owned by the Decedent. Contemporaneously with this Petition, he is filing a Petition for reimbursement from the estate, to which all of the beneficiaries have consented.

    g. If the estate has a value as shown in paragraph 10, then the Indiana Inheritance Tax due upon the estate, considering the deductions shown above, could be up to $12,210, depending upon the final amount of deductions[.]

12. The total amount of the expenses, claims and taxes described in paragraph 11 is $124,185.

13. The total of the liquid assets of the estate was $12,663, of which only $4,268 remain (See attached Exhibit A).

14. The Objectors stated in the hearing on the Petition to Sell that they want to receive distribution of respective parcels to which they are entitled under the Will and indicated that they would be willing to pay such money as is necessary to secure such distribution.

15. The non-residential portions of the Real Estate do not share equal road frontage and its tillable and wooded portions are too irregularly distributed to partition the Real Estate into separate 15 acre parcel[s] without damage to the owners, and consequently, equitable physical participation of the non-residential Real Estate is not possible.

16. If distribution of the real estate is to be made, the Co–Personal Representatives must distribute the Real Estate according to the terms of the Will without partition.

17. The Objectors may stay the Court's order to sell the Real Estate under Indiana Code § 29–1–15–4 if they post a sufficient bond to pay the remaining obligations of the estate.

18. The amount of the bond should be the amount of expenses, claims and taxes ($124,185) minus the amount of liquid assets of the estate ($12,668) for a total amount of $111,517.

WHEREFORE, George R. Jackson, II and Portia Swiger as Co–Personal Representatives of the estate of Doris P. Jackson, deceased, respectfully pray the Court to enter an order directing the Objectors to pay cash bond into the Clerk of the Court the sum of $111,517 under Indiana Code § 29–1–15–4, directing the Co–Personal Representatives to petition the Court for authority to draw against that cash bond to pay the remaining obligations of the estate, and granting all other relief just and proper in the premises.

*Id.* at 69–72.

On March 5, 2010, the trial court held a hearing on the petition to set bond, during which Appellants requested that the court set a bond pursuant to Indiana Code Section 29–1–15–4 in an amount proportionate to their share of the estimated administrative expenses. Appellants' counsel argued that "it would be unfair to post the full amount of the bond because there are sufficient assets that can be borrowed against and there are six other beneficiaries who do wish to sell." Tr. at 7. On that same date, the trial court entered an order directing Appellants to post a $100,000 cash bond on or before May 5, 2010.

On April 20, 2010, Appellants filed a "Petition to Clarify Court Order or in the Alternative to Establish a Cash Escrow Account," in which they stated that they had "made an extraordinary effort to find bond and surety in the amount of One Hundred Thousand ($100,000.00) Dollars and [had] been unable to do so." Appellants' App. at 77. Appellants asserted that the trial court's order "cause[d] some confusion by [its] reference to 'cash bond' whereas I.C. 29–1–15–4 refers to 'bond in such sums and with such sureties as the Court may approve." *Id.* They proposed depositing $32,000 in a cash escrow account "controlled by the Court with payment to the personal representatives pursuant to Court Order to reimburse the personal representatives for [their] proportionate share of the expenses of the estate[.]" *Id.* at 77–78. They further asked the court to

clarify if the amount to be posted of One Hundred Thousand ($100,000.00) Dollars is a cash bond or whether it is a bond with surety and in the alternative, ask the Court to accept the cash bond or cash escrow of Thirty Two Thousand ($32,000.00) Dollars which is in excess of their relative share of the estate's estimated expenses.

*Id.* at 78.

On April 29, 2010, the Representatives filed an objection to Appellants' petition. On that same date, the trial court entered

an order that reads in pertinent part as follows:

> And the Court, having examined the Clarification Petition, and being duly advised in the premises finds that Indiana Code § 29–1–15–4 provides in part that:
>
> > An order authorizing a personal representative to sell, mortgage or lease real or personal property for the payment of obligations of the estate shall not be granted if any of the persons interested in the estate shall execute and file in the court a bond in such sum and with such sureties as the court may approve, **conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor, within such time as the court shall direct.**
>
> And the Court finds further that a bond in an amount less than $100,000.00 would be an inadequate provision for payment of the Estate's obligations under Indiana Code § 29–1–15–4.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that beneficiaries objecting to the sale of the Real Estate shall pay cash bond into the Clerk of the Court the sum of $100,000.00 under Indiana Code § 29–1–15–4 on or before May 5, 2010.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that, if beneficiaries objecting to the sale of the Real Estate do not pay the cash bond into the Clerk of the Court under Indiana Code § 29–1–15–4 on or before the above stated date, George R. Jackson, II and Portia Swiger, as Co–Personal Representatives of the estate of Doris P. Jackson deceased, shall be hereby authorized to sell the Real Estate ... to America Land Holdings of Indiana, LLC for $1,471,763.00, which price is higher than the value of the Real Estate shown in the Inventory.

*Id.* at 8–9. This appeal ensued.

## Discussion and Decision

■ Appellants contend that the trial court erred in ordering them to post a $100,000 cash bond pursuant to Indiana Code Section 29–1–15–4. Specifically, they assert that the court erred "by requiring more than three times the amount of cash bond than was necessary from the objecting beneficiaries and by requiring a cash bond instead of one with surety." Appellants' Br. at 11. To date, this Court has not had occasion to specify the standard of review applicable to such challenges. Because Indiana Code Section 29–1–15–4 allows the trial court to "approve" both the amount and the form of the bond, we believe that an abuse of discretion of standard is appropriate here. *Cf. Mott v. State,* 490 N.E.2d 1125, 1129 (Ind.Ct.App. 1986) (stating that statutes governing criminal defendants' bail placed both "the amount of bail" and "the manner of executing the bail" within trial court's discretion). "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or it misinterprets the law." *Linton v. Davis,* 887 N.E.2d 960, 965 (Ind. Ct.App.2008), *trans. denied.*

In determining whether the trial court abused its discretion, we must scrutinize Indiana Code Section 29–1–15–4.

> The interpretation of a statute is a question of law reserved for the courts. We review questions of law under a de novo standard, and we owe no deference to a trial court's legal conclusions. Our main objective in statutory construction is to determine, effect and implement the intent of the legislature. In interpreting a statute, we will read the statute as a whole, attempting to give effect to all

provisions so that no section is held meaningless if it can be reconciled with the rest of the statute.

*Hillebrand v. Supervised Estate of Large,* 914 N.E.2d 846, 848 (Ind.Ct.App.2009) (citations omitted). "The threshold inquiry in issues of statutory interpretation is whether the statute is ambiguous. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation." *One 1968 Buick, 4 Door v. State,* 638 N.E.2d 1313, 1316 (Ind.Ct.App.1994) (citation omitted). "We will not read into a statute that which is not the manifest intent of the legislature. For this reason, it is as important to recognize not only what a statute says, but also what a statute does not say." *Cox v. Cantrell,* 866 N.E.2d 798, 809 (Ind.Ct.App.2007) (citation and quotation marks omitted), *trans. denied.*

To reiterate, Indiana Code Section 29–1–15–4 provides:

*An order authorizing a personal representative to sell, mortgage or lease real or personal property for the payment of obligations of the estate* shall not be granted if any of the persons interested in the estate shall execute and file in the court a bond in such sum and with such sureties as the court may approve, conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor, within such time as the court shall direct. An action may be maintained on such bond by the personal representative on behalf of any person interested in the estate who is prejudiced by breach of any obligation of the bond.

(Emphasis added.) [2]

■ Regarding the amount of the bond, Appellants argue that the trial court erred in not setting the bond "at an amount equal to their proportionate share" of the estate's obligations. Appellants' Br. at 9. They further argue that

[t]he inventory filed in this cause of action shows more than sufficient value of property to cover the estimated One Hundred Twenty–Four Thousand ($124,-000.00) Dollars of administrative expenses. Moreover, the proposed sale of the property to the coal company quadruples that amount of money. These assets are more than sufficient to pay the expenses.

*Id.* at 10 (citations to appendix omitted).

Appellants' argument disregards the statute's unambiguous requirement that a bond be "conditioned to pay *all* the obligations of the estate to the extent that the

---

**2.** Appellants observe that Doris's will authorizes the Representatives to sell real property without court order, and they assert that by invoking the provisions of Indiana Code Section 29–1–15–4, the Representatives have "waived the power to sell under the Will." Appellants' Br. at 13. Appellants further assert that they "spent time and expense in pursuing their rights" under the statute and that, "[a]s a result, it would be an injustice to [Appellants] if the power to sell under the Will was interpreted as deciding the issue before the court." *Id.* at 12. In response, the Representatives note that Appellants failed to raise these issues before the trial court and contend that they "may not be raised for the first time on appeal." Appellees' Br. at 28

(citing *Markland v. Jasper County Planning & Dev. Dep't,* 829 N.E.2d 92, 97 (Ind.Ct.App. 2005)). We need not specifically address the parties' waiver arguments, other than to say that because the trial court has proceeded thus far under Indiana Code Section 29–1–15–4 at the invitation of the Representatives, it would be unfair to all concerned for us to resolve the appeal based on the terms of Doris's will. *See Berman v. Cannon,* 878 N.E.2d 836, 839 (Ind.Ct.App.2007) ("A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. Invited error is not subject to review by this court.") (citation omitted), *trans. denied.*

other property of the estate is insufficient therefor." Ind.Code § 29–1–15–4 (emphases added). In other words, a bond must be sufficient to pay *all* the obligations of the estate, not just an objecting beneficiary's proportionate share. Moreover, in fixing the amount of the bond, the trial court may not consider the value of the property sought to be sold, mortgaged, or leased; the purpose of the transaction was to pay the estate's obligations, and the cancellation of that transaction means that the obligations must be paid from other sources.[3] Thus, the amount of the bond must be sufficient to pay those obligations "to the extent that the other property is insufficient therefor." *Id.*

It is true, as Appellants observe, that "[n]o finding was made by the trial court on the insufficiency of other assets to pay expenses[,]" Appellants' Br. at 9, but the uncontested evidence before the trial court clearly establishes that the estate's obligations are greater than the value of the "other property." In their petition to set bond, the Representatives asserted that "[t]he amount of the bond should be the amount of expenses, claims and taxes ($124,185) minus the amount of liquid assets of the estate ($12,663) for a total amount of $111,517." Appellants' App. at 72. Appellants point out that Doris's will authorizes the Representatives to sell any real or personal property, which the Representatives valued at approximately $42,311, not including the liquid assets.[4] In response, the Representatives note that Doris's will requires that the estate's obligations be paid out of the general estate;

as such, they assert that the house in Dugger that Doris specifically bequeathed to Portia should not be considered "other property" for purposes of Indiana Code Section 29–1–15–4. We agree with the Representatives. *Cf. In re Estate of Warman*, 682 N.E.2d 557, 560 (Ind.Ct.App. 1997) (distinguishing between "general assets of the estate" and "specific bequest[s]" for purposes of ademption), *trans. denied.* Because the difference in value between the estate's obligations and the "other property" in the estate is at least $100,000, we find no abuse of discretion in the trial court's decision to set the bond at that amount.

◼ Regarding the trial court's decision to require a cash bond, Appellants assert that the statute's reference to "sureties"

> raises the issue of whether the court in its discretion can order a cash bond or whether it must consider other "surety" such as [a] pledge of assets by [an] individual or by an insurance company. In this case, the value of the real estate transferred by the Will to the two objecting beneficiaries is sufficient surety. Cash bond is an extreme hardship because it is more expensive than either a surety provided by the individuals or by insurance companies.

Appellants' Br. at 11.

"Surety" has been defined as "security against loss or damage or for the fulfillment of an obligation, the payment of a debt, etc.; a pledge, guaranty, or bond." Dictionary.com, http://dictionary.reference.com/browse/surety. We have previously

---

**3.** To the extent Appellants suggest that the Real Estate could be partitioned such that they could keep their bequests and Peabody could purchase the remainder, and that the Representatives could mortgage the Real Estate "to provide for the Expenses of the Estate while honoring the interests of the decedent and the beneficiaries," Appellants' Reply Br.

at 8, those issues are not properly before us in this appeal.

**4.** This property comprises the house in Dugger ($32,000), cash rent checks ($3625), bank accounts ($5686), and personal property ($1000). Appellants' App. at 70.

stated, and Appellants do not dispute, that surety may be in the form of cash. *See Bailey v. Holliday,* 806 N.E.2d 6, 10 (Ind. Ct.App.2004) ("In interpreting the undertaking statute, we conclude that the surety needs to cover any judgment, including the amount of the lien, costs, and attorney fees and that that surety needs to be in a form (e.g., a bond, cash, or letter of credit) that will guarantee or secure the undertaking."). We cannot conclude that a trial court abuses its discretion in ordering a cash bond simply because it might pose a hardship and be more expensive than another form of surety.[5] Because that is the full extent of Appellants' argument on this issue, we find no abuse of discretion in this case. Therefore, we affirm.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.

---

5. As for Appellants' assertion that their interests in the Real Estate are sufficient surety, we observe that the value of their interests has yet to be determined and thus is speculative at best. There is no indication that Appellants have initiated partition proceedings, and Appellants do not specifically address the Representatives' assertions regarding the impossibility of partition as stated in their petition to set bond.