FILED

Dec 07 2017, 6:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

D. Andrew Nestrick
Raymond P. Dudlo
Stoll Keenon Ogden PLLC
Evansville, Indiana

ATTORNEYS FOR APPELLEES

David L. Jones
David E. Gray
Jones Wallace, LLC
Evansville, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

In re The Estate of
Mason R. Foertsch,

*Deceased,*

Debra S. Foertsch,

*Appellant,*

v.

Marcus Foertsch,
David Foertsch, and
Brian Foertsch,

*Appellees.*

December 7, 2017

Court of Appeals Case No.
74A05-1702-ES-375

Appeal from the Spencer Circuit
Court

The Honorable Jonathon A. Dartt,
Judge

Trial Court Cause No.
74C01-1506-ES-21

**Robb, Judge.**

# Case Summary and Issue

[1] After Mason Foertsch ("Decedent") died in June 2015, the personal representative of his estate sought a judicial determination of whether a certain specific bequest in Decedent's will had been adeemed. The bequest in question is described in the Second Codicil to Decedent's will as funds held at Merrill Lynch. The Merrill Lynch account no longer existed at the time of Decedent's death, as he had transferred his investment account at Merrill Lynch to a new brokerage firm several years prior to his death. The trial court determined the bequest had not been adeemed and directed distribution of Decedent's estate accordingly. Debra Foertsch, Decedent's surviving spouse, appeals, raising one issue for our review: whether the trial court erred in determining the bequest of the Merrill Lynch account had not been adeemed. Concluding the trial court did not err because the specific bequest at issue changed only in form, we affirm.

# Facts and Procedural History

[2] On November 22, 2005, Decedent executed a will. Item Three, subsection (g) of the will stated:

> Any and all funds held in Legg-Mason, Oakmark, Advest and Spencer County Bank shall be distributed to Richard A. Wetherill as Trustee and the funds distributed to Debra Pund pursuant to the provision set out in Item Five herein.

Appellant's Appendix, Volume 2 at 29. Item Five of the will describes the administration of a Qualified Terminal Interest Property Trust ("Q-Tip Trust"). Item Five provides, in part, that Debra Pund would receive annually the greater of the net income generated by the Q-Tip Trust or $84,000. No other distributions were to be made from the Q-Tip Trust during Debra's lifetime, and at her death, the remainder was to be distributed to Decedent's grandsons, David, Brian, and Marcus Foertsch (collectively, "Grandsons") according to Item Seven of the will. At the time Decedent signed the will, his broker of record was Fraser Schaufele, a broker at Advest.

[3] On February 14, 2006, Decedent executed a First Codicil to the will that acknowledged he and Debra had married and provided that any references to "Debra Pund" in the will were changed to "Debra Foertsch." *Id.* at 37. The First Codicil otherwise ratified the provisions of the will.

[4] In 2006, Merrill Lynch acquired Advest, absorbing Advest's accounts and employees, including Mr. Schaufele. On July 26, 2007, Decedent executed a Second Codicil to the will that changed Item Three, subsection (g) to the following:

> Any and all funds held in Legg-Mason, Oakmark and Merrill Lynch shall be distributed to Richard A. Wetherill as Trustee and the funds distributed to Debra Foertsch pursuant to the provision set out in Item Five of my Last Will and Testament dated November 22, 2005. Upon depletion of the Old National Bank account in paying taxes, then, and upon that event, I direct said Trustee to use the above accounts to pay said taxes.

*Id.* at 39. In October 2008, Mr. Schaufele left his employment at Merrill Lynch and went to work at Raymond James and Associates. Also in October 2008, Decedent directed Merrill Lynch to transfer the assets in his account to a newly opened Raymond James account "in kind." *Id.* at 91. Decedent signed a Third Codicil to his will on August 31, 2009. The Third Codicil made a number of changes to the will, but did not change the provisions of Item Three, subsection (g) or Item Five, with the exception of naming an alternate trustee.

Mr. Schaufele served as Decedent's broker of record and investment advisor from the early 2000s until Decedent's death in 2015. Decedent regularly received the net income generated from the Advest/Merrill Lynch/Raymond James account and occasionally deposited additional money, but he never drew on the corpus of the account. Decedent also sold investments from time to time and reinvested the proceeds, but he did not distribute proceeds from those transactions to himself or others.

Decedent died on June 2, 2015. His will and the three codicils to the will were admitted to probate on June 25, 2015. In July 2016, the personal representative of Decedent's estate filed a petition for clarification of account distribution seeking a ruling on whether the specific bequest of any and all funds at Merrill Lynch had been adeemed by extinction. Debra and the Grandsons filed responses to the personal representative's petition[1] and the trial court held a

---

[1] These responses are not included in the record. Presumably, as on appeal, Debra was in favor of ademption because if the trial court so found, the money in the Raymond James account (approximately $750,000

hearing on the matter. Following the hearing, the trial court issued findings of fact and conclusions thereon, concluding the specific bequest of funds held in the Merrill Lynch account was not adeemed:

> 1. The issue before the Court is whether the specific bequest of any funds remaining in one of three investment accounts specifically bequeathed to the Q-Tip Trust by the Decedent was adeemed by extinction because that account was transferred from Merrill Lynch, in kind and asset for asset, into an investment account at Raymond James after the Second Codicil was signed.
>
> * * *
>
> 3. Ademption is the act "by which a specific legacy has become inoperative because of the withdrawal or disappearance of its subject matter from the testator's estate in his lifetime."
>
> * * *
>
> 8. Under [Indiana's approach], the first step is to establish the identity of the specific bequest. Here, the specific bequest at issue is "any and all funds in the Merrill Lynch account" as referenced in Item Three (g) of the Second Codicil.

according to a November 2015 inventory of estate assets) would go into the general corpus of the estate and be paid to Debra. If the account was *not* adeemed, the funds would go into the Q-Tip Trust from which Debra would get only the income during her lifetime and the remainder would go to the Grandsons on Debra's death.

9.  The second step is the application of the form vs. substance test.  Under that test, the question is whether the change is a mere change in form or one of substance.

* * *

11.  The bequest at issue is clear and unambiguous.  Decedent bequeathed three investment accounts to the Trustee of the [Q-Tip] Trust he established for the benefit of his spouse during her lifetime and his grandchildren thereafter.

* * *

14.  The transfer of all of the assets in one investment account to an account maintained with a different brokerage house or, in effect, custodian was a change of form, not of substance because the investment account continued to exist and operate just as it had when the Decedent created the bequest by signing his Will.  Furthermore, Decedent never removed the funds from the Merrill Lynch account from his Last Will and Testament.  At his death, the funds in that account (which are now in the Raymond James) account [sic] were still to go in the [Q-Tip] Trust for the benefit of his spouse and his grandchildren.

15.  The Court finds the specific subject matter of the bequest, funds from the Merrill Lynch account were still in existence at Decedent's death under the name of a different brokerage firm, Raymond James.  The change of the name of the investment account to a different one under another brokerage firm but still containing the same assets and under the care of the broker is a mere change in form and not of substance.  This interpretation is also consistent with assuring the terms of Decedent's Last Will and Testament and resulting trusts make sense and allow Decedent to accomplish his estate plan as set forth in his Will.

\* \* \*

17. The bequest of the investment account at Merrill Lynch was not adeemed simply because the assets were transferred to another brokerage house.

### Judgment

Wherefore, this Court now finds that the Decedent's Investment Account at Raymond James . . . should and does pass to the Trustee of the Q-Tip Trust pursuant to the provisions of [Item Three] Subsection (g) of the Will and Second Codicil. The Executor of the Decedent's Estate is hereby instructed and directed to make all distributions from this Estate on that basis.

*Id.* at 23-27. Debra now appeals.

# Discussion and Decision

## I. Standard of Review

At the request of the parties, the trial court entered findings of fact and conclusions thereon pursuant to Trial Rule 52(A).[2] In such a case, we review for clear error, first considering whether the evidence supports the findings and

---

[2] It is unclear whether the parties made a written request for findings prior to the hearing or only an oral request at the outset of the hearing. The difference is important because we have held only written requests invoke Trial Rule 52(A) review. *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017). However, Debra, as appellant, has stated the standard of review applicable to this case as that applicable to Trial Rule 52(A) findings and conclusions, *see* Brief of Appellant at 8-9, and the Grandsons have agreed this is the applicable standard of review, *see* Brief of Appellees at 9. Because we have limited information and the parties agree Trial Rule 52(A) governs, we will apply that standard of review.

then whether the findings support the judgment. *Hemingway v. Scott*, 66 N.E.3d 998, 1000 (Ind. Ct. App. 2016). We will reverse only if the trial court's findings are unsupported by the evidence or if the judgment is unsupported by the findings and conclusions. Ind. Trial Rule 52(A) ("[T]he court on appeal shall not set aside the findings or judgment unless clearly erroneous . . . ."). We defer to the trial court's findings of fact, but apply a de novo standard to the trial court's conclusions. *Hemingway*, 66 N.E.3d at 1000.

## II. Ademption

[8] Ademption by extinction is "defined as an act which causes a legacy to become inoperative because the subject matter of the legacy has been withdrawn or disappeared during the testator's lifetime." *In re Estate of Young*, 988 N.E.2d 1245, 1248 (Ind. Ct. App. 2013). The doctrine applies only to specific bequests and "occurs only when the subject matter of the legacy is so altered or extinguished that the legacy was completely voided." *Id.* In Indiana, we apply the "Modern Rule" of ademption, by which we first establish the identity of the specific bequest at issue and then apply the form and substance test. *Id.* The form and substance test states that if there has been only a formal change in the bequest since the execution of the will, there is no ademption, but if the specific bequest has changed in substance, the bequest is adeemed. *Id.* In other words, the court is not required to search for intention to adeem,[3] but only needs to

---

[3] Until 1973, Indiana adhered to the "Ancient Rule," by which the intention of the testator to adeem was analyzed as determined by the terms of the will and all relevant facts and circumstances occurring between

determine whether the specific subject of the bequest is still in existence. *In re Estate of Warman*, 682 N.E.2d 557, 560 (Ind. Ct. App. 1997), *trans. denied*. The testator's intent is relevant only to determining the identity of the bequest from the four corners of the instrument. *Id.* Slight changes in form do not cause ademption. *Id.* at 561. When a bequest is adeemed, the proceeds pass through the residuary clause of the will. *In re Estate of Young*, 988 N.E.2d at 1248.

[9] Indiana courts have decided relatively few ademption cases, and none are precisely on point with the facts here. In *Pepka v. Branch,* the first Indiana case to apply the Modern Rule, we found no ademption. There, the testator executed a will leaving his sole proprietorship in unequal parts to his son, wife, and sister. The residuary of his estate was left to his wife. A few weeks after executing the will, the testator converted the sole proprietorship into a corporation. After incorporation, there was no change in the business, its location, or its employees, and the testator continued to operate the business at the time of his death. The testator died approximately two years after incorporating the business. His wife filed a petition for construction of the will, alleging the specific bequest of the company was adeemed and the company passed to her alone as the residuary beneficiary. The trial court disagreed, as did this court on appeal. After adopting and applying the Modern Rule for determining whether ademption has occurred, we held as to the testator's

---

the execution of the will and the testator's death. *Pepka v. Branch*, 155 Ind. App. 637, 654, 294 N.E.2d 141, 150-51 (1973). *Pepka* adopted the Modern Rule, as most other states had done, and removed the consideration of extrinsic evidence from the analysis. *Id.* at 657, 294 N.E.2d at 153.

business that "[i]n the transition, the essential thing was only altered in form." 155 Ind. App. at 664, 294 N.E.2d at 157.

[10] The cases that followed *Pepka* found an ademption had occurred after applying the form and substance test. In *Weaver v. Schultz*, 177 Ind. App. 563, 380 N.E.2d 601 (1978), the testator made a specific bequest to his daughter of the proceeds from a certain life insurance policy. At the time of making his will, the testator had a life insurance policy that named his daughter as beneficiary. Approximately one year later, the testator changed the beneficiary of the policy to his wife. The testator later borrowed funds from the policy to purchase a business property and was ultimately paid the remaining cash surrender value of the policy. We held the specific bequest of life insurance proceeds to the daughter was adeemed by extinction because, despite the testator's clear intention at the time of making his will that his daughter receive the insurance policy proceeds as her share of his estate, the subsequent change from insurance proceeds to property and cash was "not merely an alteration in form, but rather, was one of substance; in fact, the bequest of proceeds clearly did not exist at the death of the testator." *Id.* at 567, 380 N.E.2d at 603.

[11] In the case of *In re Estate of Young*, 988 N.E.2d 1245 (Ind. Ct. App. 2013), the testator executed a will in 1976 making a specific bequest to her son of a residence at a certain address in Bloomington. The residue of her estate was to go to her second husband. The son predeceased the testator but she never changed her will. On May 2, 2012, the testator sold the Bloomington property to the State of Indiana but the proceeds of $263,550 had not been paid at the

time of her death. On June 6, 2012, the testator purchased property for $288,257. The testator died on June 26, 2012. Her husband filed a petition for probate listing himself as the only beneficiary. The testator's grandchildren contested, claiming they should have been listed as beneficiaries as well since they would stand in the shoes of their deceased father and be entitled to the proceeds of the Bloomington property. The trial court found that since the property was no longer owned by the testator at her death, it was adeemed by extinction and the proceeds from the sale should go to the testator's husband through the residuary clause. This court agreed, holding the bequest of the specific property had changed in substance, from a piece of real estate to proceeds from the sale. *Id.* at 1248.

[12] And finally, in the case of *In re Estate of Warman*, 682 N.E.2d 557 (Ind. Ct. App. 1997), *trans. denied*, the testator executed his will in 1992 containing a specific bequest that any recovery or settlement he received following a railroad injury would be divided equally between his wife and his son. Approximately a year later, the testator received a settlement of $650,000 for the injury. The testator used the funds to purchase real property, several cars, computers, and a gun collection. He also made gifts of money to his friends and family. He then deposited the remaining $2,000 in a bank account. After the testator died, his wife and son disputed how the estate should be distributed. The trial court found the testator had "invested [the settlement] in other assets" and the specific bequest was not adeemed. *Id.* at 560. This court disagreed, noting that had the testator initially purchased investments such as certificates of deposit or

mutual funds with the settlement money, and such investments remained at the time of his death, "we might be inclined to find that only the form of the settlement had changed because the money was initially invested as soon as [testator] received it." *Id.* at 562. However, because testator spent the settlement money on a variety of items "vastly different than investing part or all of the funds with the intention of keeping the money largely intact[,]" he failed to preserve the integrity of the settlement and both the form and the substance of the specific bequest had changed. *Id.* at 563. The bequest was therefore adeemed, and the son was not entitled to trace the settlement to any item purchased with the money to satisfy the bequest. *Id.*

[13] As previously noted, none of these cases are exactly on point. However, the facts of this case are closer to those of *Pepka* than those of *Weaver*, *Young*, or *Warman*. In *Weaver*, the specific bequest changed from life insurance proceeds to property and cash. In *Young*, the specific bequest changed from real estate to cash. And in *Warman*, the specific bequest changed from settlement proceeds to real and personal property. These were all changes of substance, as the subject of the specific bequest no longer existed as it had at the time the will was executed. However, in *Pepka*, the specific bequest was a business that, despite changing from a sole proprietorship to a corporation, remained a business at the time of the testator's death operating as it had previously; much as here, the specific bequest was an investment account that, despite changing brokerage firms, remained an investment account managed by the same broker and in the same manner from the time Decedent executed his will until his death

regardless of where the account was held. Decedent's intent at the time of executing his will and the Second Codicil was to provide from his investment account for his wife during her lifetime and for his grandsons after her death. The *place* where the investment account was located was not the critical factor – the investment *funds* were. Decedent did not alter or dispose of the subject of the specific bequest by moving the funds in total to a different brokerage firm to follow the broker with whom he had a lengthy relationship. *Cf. In re Estate of Geary*, 275 S.W.3d 835, 843 (Tenn. Ct. App. 2008) (holding specific bequest of an investment account identified by account number and brokerage firm was not adeemed when testator moved the entire account to a new brokerage firm under a different account number; the subject of the bequest was substantially preserved and the changes were "formal and nominal"), *appeal denied*.

[14] Debra argues the "substance of the funds" in the investment account "changed dramatically" from 2008, when the funds in the Merrill Lynch account were moved to Raymond James, to 2015, when Decedent died. Br. of Appellant at 8. Debra notes the trial court correctly found Decedent deposited $92,909.95 into the account, made $449,138.17 in purchases and $317,042.34 in sales and redemptions, and withdrew $195,047.95 from 2008 to 2014. The "hundreds of thousands of dollars of deposits, withdrawals, purchases, and sales" and "nearly . . . 60% increase in account value" cited by Debra as proof of ademption do not represent a change in the substance of the specific bequest.

*Id*. at 12-13.[4]  Rather, they represent the very nature of an investment account. Purchases and sales are made within an investment account in the hope the account will increase in value.  Decedent's broker testified that Decedent was an astute businessman who was active in communicating with his broker and curating his investments, presumably for the benefit of himself and his heirs pursuant to the terms of his will.

[15]    Accordingly, we hold the specific bequest of "any and all funds at Merrill Lynch" changed only in form and not in substance when Decedent moved his Merrill Lynch investment account, in total and in kind, to a new brokerage firm where he continued to administer the account as he had before.  Therefore, the trial court did not clearly err in finding the bequest was not adeemed and ordering the personal representative to proceed with making distributions from Decedent's estate on this basis.

# Conclusion

[16]    The trial court did not err in finding Decedent's specific bequest of the funds once existing in a Merrill Lynch investment account were not adeemed by

---

[4] By Debra's logic, if all of these transactions had taken place but the account had remained at Merrill Lynch until Decedent's death, the specific bequest would still have been adeemed because the exact same funds were not in the account at the time of Decedent's death as at the time Merrill Lynch took over Advest.  Such a construction of the form and substance test is too rigid.

extinction when Decedent moved the funds to a new brokerage firm. The judgment of the trial court is affirmed.

[17]     Affirmed.


Riley, J., and Pyle, J., concur..